STATE OF NORTH DAKOTA ON RELATION OF JOHN H. TRIMBLE, J. H. Cook, and W. R. Banks, Drain Commissioners of Bottineau County, and S. E. Brady, A. W. Gantz, and H. T. Lee, Drain Commissioners of McHenry County, All Together Forming the Joint Board of Drain Commissioners of the Counties of Bottineau and McHenry v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY, a Corporation.

(150 N. W. 463.)

**Mandamus — drainage commission — railway company — unnavigable stream — removal of bridge — to enable contractor to navigate his dredges and flatboats along said stream.**

1. Mandamus will not lie at the suit of a drainage commission appointed

---

Note.—The general question of the obstruction of the waters of a stream by a railroad bridge is the subject of a note in 59 L.R.A. 863.

and created under the provisions of chapter 23, Rev. Codes 1905, to compel a railway company to remove a bridge from an unnavigable stream, merely that a contractor appointed by the commissioners to improve such stream in order to drain adjacent lands may proceed with his work by navigating his dredges and flatboats along said stream and past said bridge.

**Railway company — bridge across unnavigable stream — must not obstruct passage of water in said stream — reasonable and natural flowage — continuing duty.**

2. A railway company which builds a bridge across an unnavigable stream must, however, accommodate itself to and provide for the undisturbed passage along said stream of all of the water which is or may be reasonably anticipated to drain therein; and this duty is a continuing duty.

### Additional Syllabus on Rehearing.

3. A finding of fact by the trial court in a mandamus proceeding will, if supported by at least some creditable testimony, not be set aside by the supreme court on appeal.

Opinion filed November 2, 1914. On Rehearing January 8, 1915.

Mandamus to compel the removal of a bridge from the channel of an unnavigable stream. Appeal from the District Court of Bottineau County, *Burr,* J. Judgment for petitioner. Defendant appeals.

Reversed and remanded with directions.

Statement of facts by BRUCE, J.:

This is an action in mandamus to compel the defendant to remove its bridge from the channel of the Mouse river. The relators, who are the respondents on this appeal, are members of the drainage board of Bottineau and McHenry counties. They are engaged in opening the Mouse river, under the drainage laws of this state. The work of cleaning out and dredging the stream is being done by the France Dredging and Construction Company, and by means of a steam dredge, which is floated in the channel of the stream. The defendant owns a right of way 100 feet wide, which crosses the said stream, and upon which, in 1905, it constructed a track, and since that time has been operating its trains. At this crossing of the above river and on the above land the defendant constructed a trestle or bridge about 1,300 feet in length. The dredge will not pass under the bridge. The plaintiffs have obtained no right to go upon the defendant's premises by purchase or condemnation, and have no right of entry unless it is given them by statute or the common law. The plaintiff prosecuted these proceedings by

mandamus, in which, among other things, it is alleged that "said trestle and bridge is built upon piles and timbers driven into and sunk in the bed of said river; that said trestle and bridge so built as aforesaid is now owned, controlled, and operated by the said defendant as a part of its said line and as the means and method of crossing said river; that the said piles and timbers so placed, sunk, and driven in said river and the bed thereof constitute an obstruction to the flow of said stream, diminish its fall and current, causing deposits of sediment and material in the bed thereof, and materially interfere with, obstruct and diminish the drainage of the territory tributary thereto by said river." It further alleges that the work of deepening the channel is "done by means of large steam dredges located and constructed on large flatboats which float in the channel of said stream, and that in connection therewith the contractors used houseboats for the boarding of their men, and steamboats to carry provisions, fuel, and supplies, and to move the said dredges. That the said work began at the southern point and at a point south of the said bridge so constructed, owned, and maintained by the defendant herein; that in the performance of said work, said dredges and boats are working north, and it is necessary to pass the said bridge, and also to excavate, widen, deepen, and straighten the channel of the river at said bridge; that said work cannot be done, nor can said boats pass down said Mouse river without the removal of said bridge."

The petition therefore prayed that the defendant be compelled to remove the bridge at its own expense. The facts in the case which are found by the trial court, and which seem to be conceded by both parties, are as follows: The Mouse river enters the United States from Canada, and after running south turns north and re-enters Canada, and its waters finally reach Hudson's Bay. It is a natural water course, furnishing natural drainage for portions of Bottineau and McHenry counties. It is non-navigable, but runs the entire year. Its normal depth in the bed of the stream is from 1 to 6 feet. It is winding, runs through a level country, and is not subject to sudden freshets or increase of volume, and its current is about $\frac{1}{4}$ of a mile per hour. The bridge was constructed by the railway company in 1905, rests upon piles driven into the river or its adjacent banks. All of the land upon which the bridge is constructed, and all of the land on which it bridges the river, is owned in fee by the railway company. The bridge consists of piling,

and a superstructure which consists of stringers laid on caps on the top of piles, which said stringers support the ties, rails, and other materials and substances which may be called the superstructure and constitutes the roadway proper; that the piles forming the support of the superstructure are set in rows of five each, the rows being 14 feet and 6 inches apart. They are driven 22 feet into the ground. The greatest depth of water in the stream under the bridge is approximately 4 feet, the stream under the bridge is approximately 125 feet wide. It is $11\frac{1}{2}$ feet from the surface of the water to the bottom of the superstructure. The bridge and trestle is 199 feet and 9 inches long; 100 feet of it must be removed to permit the dredge to pass through. Six rows of piling will have to be taken out. The estimated cost of the drainage improvement will be $141,827.84. The estimated benefits are $342,-539.44. The improvement will restore to cultivation approximately 125,000 acres of land which are practically valueless for want of drainage. This land, when drained, will be worth from $50 to $100 per acre. The work contemplates only draining such land as naturally drains into the Mouse river, and the sole and only purpose of such work and improvement is to create and maintain such a current in the stream as will promptly carry off the water naturally draining therein. The drainage board contracted with the France Dredging & Construction Company for doing the work in accordance with the plans and specifications of the engineer. The proposed drain is 42 miles long. The work is being done by means of a large steam dredge located on flatboats which float in the channel of the stream. Work was commenced south of the bridge, and the contractors are working north. It will be necessary to pass defendant's bridge to complete their work north of it under their contract, if this method is pursued, this method being the only practicable and least expensive one, taking into consideration the magnitude of the work. The earth excavation from defendant's roadway and under its bridge can be had at an expense of $500 by using men on small boats or wading in the channel. The six rows of piling in the channel, and the sawed off piles, can be removed and other piling put in which will conform to the engineer's requirements, at an expense of $700. The superstructure can be removed and replaced upon the piling for $800. The dredge can be moved from one side of the bridge to the other after taking down and removing the super-

structure, as well as the pilings and support.   It would cost about $5,000 to take the dredge apart and remove it to the north side.

The superstructure of the bridge has never obstructed the natural waterflow.   It is supported by eighty-seven rows of piling, which leave a large opening underneath, so that all the water in the river has always passed under it without interference other than by the rows of piling. The additional flowage resulting from the proposed improvement will flow under the superstructure without interference therefrom.   The defendant has now six rows of piling upon the 100-foot strip which will constitute the proposed new channel, which have been cut off about the surface of the water.   It will cost the drainage board about $50 to remove this abandoned piling, which constitutes an obstruction to the opening of the channel as provided in the engineer's plan.   Its removal is necessary to obtain the flow which the plans contemplate.

These facts seem to be conceded.   The only facts, indeed, which seem to be in dispute are those covered by the fifth finding of the trial court, which is as follows:   "That said trestle and bridge, including the piles and other timbers thereof, sunk, driven, or extending into or through the water and into the bed of the Mouse river, constitute, are now, and have been since their construction, an obstruction and obstacle to the flow of said stream, and by reason thereof have impeded and diminished the natural drainage accomplished thereby; that they retard and restrain the ice in the spring of the year, and by reason whereof there is deposited considerable amounts of dirt, silt, and *débris* in the bed of said stream, thereby further obstructing the flow thereof and impairing its usefulness for drainage purposes."

*Watson & Young,* for appellant (Geo. A. Kingsley, of counsel).

The stream over which defendant's bridge is built is unnavigable. Defendant owned the banks and soil; it had the possession of the water flowing over it and the right to make reasonable private use of same. All such streams, within a reasonable degree, are private property. 38 Cyc. 995, 996, and cases cited; Rev. Codes 1905, § 4707; Stur v. Beck, 6 Dak. 71, 50 N. W. 486, affirmed in 133 U. S. 541, 33 L. ed. 761, 10 Sup. Ct. Rep. 350.

The drainage board may only acquire a right of way for drains either by purchase or condemnation.   It has no right to authorize its

dredging contractor to enter upon such private property until the right of entry has been secured. Laws 1907, chap. 93, amending §§ 1819–1823, 1827, 1829, 1831, 1832, 1835, 1840, 1849; State ex rel. v. Soo R. Co.

The defendant's bridge and piling were lawfully built, and defendant had the right to use the same and the same could not be taken away, or the bridge removed, even by condemnation proceedings, without full pay for same. St. Helena Water Co. v. Forbes, 62 Cal. 182, 45 Am. Rep. 659; Lux v. Haggin, 69 Cal. 255, 10 Pac. 674; Stenger v. Tharp, 17 S. D. 13, 94 N. W. 402.

The right of defendant to use such stream is not an easement, but an incident to and a part of the land itself, and can only be lost by adverse right, grant, abandonment, or prior legal appropriation. Hanford v. St. Paul & D. R. Co. 43 Minn. 104, 7 L.R.A. 722, 44 N. W. 1144; Brisbine v. St. Paul & S. C. R. Co. 23 Minn. 114; Carli v. Stillwater Street R. & Transfer Co. 28 Minn. 373, 41 Am. Rep. 290, 10 N. W. 205; Union Depot, Street R. & Transfer Co. v. Brunswick, 31 Minn. 297, 47 Am. Rep. 789, 17 N. W. 626; Yates v. Milwaukee, 10 Wall. 497, 19 L. ed. 984; Bell v. Gough, 23 N. J. L. 624; Delaplaine v. Chicago & N. W. R. Co. 42 Wis. 214, 24 Am. Rep. 386.

Such property is subject to the law of eminent domain. Grand Rapids & I. R. Co. v. Butler, 159 U. S. 87, 93, 40 L. ed. 85, 87, 15 Sup. Ct. Rep. 991; Society for establishing useful manufactures v. Morris Canal & Bkg. Co. 1 N. J. Eq. 157, 21 Am. Dec. 41; Gardner v. Newburgh, 2 Johns. Ch. 162, 7 Am. Dec. 526; Fitzh. Nat. Brev. 184; Moore v. Browne, 3 Dyer, 319b; Luttrel's Case, 4 Coke, 86; Glyn v. Nichols, Comb. 43, 2 Shower, K. B. 507; Prickman v. Trip, Comb. 231.

Where such property is sought to be taken or used in an adverse manner to the rights of the owner, just and full compensation must be made. Martin v. Tyler, 4 N. D. 278, 25 L.R.A. 838, 60 N. W. 392; Bigelow v. Draper, 6 N. D. 152, 69 N. W. 570; Const. § 210; Rev. Codes 1905, § 2947, subdiv. 3, § 5958, subdiv. 1; 1 Rorer, Railways, 444; Old Colony & F. River R. Co. v. Plymouth County, 14 Gray, 155; Johnson v. Jordan, 2 Met. 234, 37 Am. Dec. 85; St. Helena Water Co. v. Forbes, 62 Cal. 182, 45 Am. Rep. 659; Rumsey v. New

York & N. E. R. Co. 133 N. Y. 79, 15 L.R.A. 618, 28 Am. St. Rep. 600, 30 N. E. 654.

These plaintiffs were trespassers, because they had not acquired the right to enter upon defendant's property. "Every unauthorized entry upon the land of another is a trespass." 38 Cyc. 985, 995, and cases cited; Wood v. Snider, 187 N. Y. 28, 12 L.R.A.(N.S.) 912, 79 N. E. 859; 30 Am. & Eng. Enc. Law, 308–400, 454; 40 Cyc. 542–846; United States v. Sears, 55 Fed. 268; United States v. Debs, 65 Fed. 210.

The fee owner of land has the right to use the surface, and everything permanently situated beneath or above it. Rev. Codes 1905, § 4798; Bigelow v. Draper, 6 N. D. 152, 69 N. W. 570; State Const. § 210; United States Const. art. 14, § 1;, Rev. Codes 1905, §§ 1837, 1838, 7574, 7575; Chicago, B. & Q. R. Co. v. Illinois, 200 U. S. 561, 50 L. ed. 596, 26 Sup. Ct. Rep. 341, 4 Ann. Cas. 1175; State ex rel. Fadley v. Henry County, 157 Ind. 96, 60 N. E. 939.

*Geo. A. Bangs* and *Geo. A. Robbins,* for respondents.

The fact that a ditch is constructed over and along a natural course, so that the waters are confined in the artificial channel, does not change its character as a water course. 30 Am. & Eng. Enc. Law, 350; Schwartz v. Nie, 29 Ind. App. 329, 64 N. E. 619; Walley v. Wiley, — Ind. App. —, 104 N. E. 318.

The owner of the bed of such a stream is no more the owner of the water in it than he is of the air around and above it. He may use both in a reasonable manner. Rev. Codes 1905, §§ 4787–4709, § 4798, subdivs. 5, 9, 11; Chicago & N. W. R. Co. v. Drainage Dist. 142 Iowa, 607, 121 N. W. 193; 14 Enc. Laws of Eng. 604; Embrey v. Owen, 6 Exch. 353, 20 L. J. Exch. N. S. 212, 15 Jur. 633, 10 Eng. Rul. Cas. 179; Gaved v. Martyn, 19 C. B. N. S. 732, 34 L. J. C. P. N. S. 353, 11 Jur. N. S. 1017, 13 L. T. N. S. 74, 14 Week. Rep. 62; Roberts v. Gwyrfai [1899] 2 Ch. 608, 68 L. J. Ch. N. S. 757, 64 J. P. 52, 48 Week. Rep. 51, 81 L. T. N. S. 465, 16 Times L. R. 2, 25 Eng. Rul. Cas. 401.

The natural rights of a riparian proprietor impose corresponding obligations on all others; and thus it is wrongful for a lower riparian owner to pen the water back and obstruct the flow. Robinson v. Byron,

1 Bro. Ch. 588.; 1 Wood, Nuisances, 94, 609; Gould, Waters, § 212, p. 416; 1 Lewis, Em. Dom. § 67; State v. Close, 35 Iowa, 570; Abbott v. Kansas City, St. J. & C. B. R. Co. 83 Mo. 276, 53 Am. Rep. 581; Hayes v. St. Louis & S. F. R. Co. 177 Mo. App. 201, 162 S. W. 266; Veazie v. Dwinel, 50 Me. 486; McCleneghan v. Omaha & R. Valley R. Co. 25 Neb. 531, 13 Am. St. Rep. 508, 41 N. W. 350; Fairbury Brick Co. v. Chicago, R. I. & P. R. Co. 79 Neb. 854, 13 L.R.A.(N.S.) 542, 113 N. W. 535; Smith v. Chicago, B. & Q. R. Co. 81 Neb. 186, 115 N. W. 755; Mills v. Hall, 9 Wend. 315, 24 Am. Dec. 160; Chicago, B. & Q. R. Co. v. People, 212 Ill. 109, 72 N. E. 219; Chicago & N. W. R. Co. v. Drainage Dist. 142 Iowa, 607, 121 N. W. 193; Cary v. Daniels, 5 Met. 238; Pollock C. B. in Dickinson v. Grand Junction Canal Co. 7 Exch. 282, 21 L. J. Exch. N. S. 241, 16 Jur. 200; Lord Wensleydale in Chasemore v. Richards, 7 H. L. Cas. 349, 29 L. J. Exch. N. S. 81, 5 Jur. N. S. 873, 7 Week. Rep. 685, 1 Eng. Rul. Cas. 729, 5 Hurlst. & N. 989.

The riparian owner has the right to protect his easement, and to remove obstructions which interfere with the flow of the water in its natural state, whether they be natural or artificial. Gould, Waters, §§ 365, 366, pp. 671, 672; 2 Farnham, Waters, 464, 464a, 480, 812; Darlington v. Painter, 7 Pa. 473; Dyer v. Depui, 5 Whart. 584; Kauffman v. Griesemer, 26 Pa. 407, 67 Am. Dec. 437; Heath v. Williams, 25 Me. 209, 43 Am. Dec. 265; Rockland Water Co. v. Tillson, 75 Me. 170; Pico v. Colimas, 32 Cal. 578; Ware v. Walker, 70 Cal. 591, 12 Pac. 475; Ames v. Dorset Marble Co. 64 Vt. 10, 23 Atl. 857; Treat v. Bates, 27 Mich. 390; Prescott v. Williams, 5 Met. 429, 39 Am. Dec. 688; Prescott v. White, 2 Pick. 341, 32 Am. Dec. 266; White v. Chapin, 12 Allen, 521; Cobb v. Massachusetts Chemical Co. 179 Mass. 423, 60 N. E. 790; Scriver v. Smith, 100 N. Y. 471, 53 Am. Rep. 224, 3 N. E. 675; Roberts v. Roberts, 55 N. Y. 275; Chapman v. Thames Mfg. Co. 13 Conn. 269, 33 Am. Dec. 401; Legg v. Horn, 45 Conn. 409; Wright v. Moore, 38 Ala. 593, 82 Am. Dec. 735; Manteufel v. Wetzel, 133 Wis. 619, 19 L.R.A.(N.S.) 167, 114 N. W. 91; Mason v. Fulton County, 80 Ohio St. 151, 24 L.R.A.(N.S.) 903, 131 Am. St. Rep. 689, 88 N. E. 401.

Nature has already granted all such rights with respect to a natural stream, such as the one obstructed in this case. Chicago, B. & Q. R.

Co. v. Appanoose County, 31 L.R.A.(N.S.) 1117, 104 C. C. A. 582, 182 Fed. 291; Cache River Drainage Dist. v. Chicago & E. I. R. Co. 255 Ill. 403, 99 N. E. 635; People ex rel. Peeler v. Chicago & E. I. R. Co. 262 Ill. 501, L.R.A.1915B, 486, 104 N. E. 381.

The drainage laws are enacted and enforced under the police power of the state. Our law, as an exercise of such power, is constitutional. 2 Farnham, Waters, § 170, p. 900; 14 Cyc. 1025; Erickson v. Case County, 11 N. D. 494, 92 N. W. 841; Soliah v. Cormack, 17 N. D. 393, 117 N. W. 125; Soliah v. Heskin, 222 U. S. 522, 56 L. ed. 294, 32 Sup. Ct. Rep. 103; Freeman v. Trimble, 21 N. D. 1, 129 N. W. 83.

Mandamus is a common-law remedy; it has no connection with equitable jurisdiction; it is a special proceeding of a civil nature. 3 Enc. Pl. & Pr. 491; 26 Cyc. 140; Rev. Codes 1905, §§. 6741–6746, 7808, 7809, 7832, 7833, 7841; State ex rel. Bickford v. Fabrick, 16 N. D. 94, 112 N. W. 74; Oliver v. Wilson, 8 N. D. 590, 73 Am. St. Rep. 784, 80 N. W. 757; State ex rel. McGregor v. Young, 6 S. D. 406, 61 N. W. 165; Mooney v. Donovan, 9 N. D. 93, 81 N. W. 50.

On appeal the court will sustain the findings upon disputed questions of fact; the findings are the same as a verdict; if there is any evidence to support the findings, they will be sustained on appeal. 15 Cyc. 166; Schuman v. Sanderson, 73 Ark. 187, 83 S. W. 940; Williams v. Buchanan, 86 Ark. 259, 110 S. W. 1024; Trafton v. Quinn, 143 Cal. 469, 77 Pac. 164; Hannah v. Green, 143 Cal. 19, 76 Pac. 708; Vigil v. Garcia, 36 Colo. 430, 87 Pac. 543; Moorhead v. Arnold, 73 Kan. 132, 84 Pac. 742; McCormick v. Jester, 53 Tex. Civ. App. 306, 115 S. W. 278.

The presumption of the law is that officials do their duty in a regular manner. Rev. Codes 1905, § 7317, subdiv. 15; State ex rel. Little v. Langlie, 5 N. D. 603, 32 L.R.A. 723, 67 N. W. 958; Fisher v. Betts, 12 N. D. 209, 96 N. W. 132; Pine Tree Lumber Co. v. Fargo, 12 N. D. 376, 96 N. W. 1036; Greenfield School Dist. v. Hannaford Special School Dist. 20 N. D. 398, 127 N. W. 499; Galehouse v. Minneapolis, St. P. & S. Ste. M. R. Co. 22 N. D. 615, 47 L.R.A. (N.S.) 965, 135 N. W. 189; State ex rel. Johnson v. Ely, 23 N. D. 619, 137 N. W. 834; Bank of United States v. Dandridge, 12 Wheat. 64, 6 L. ed. 552; Knox County v. Ninth Nat. Bank, 147 U. S. 91, 37

L. ed. 93, 13 Sup. Ct. Rep. 267; Nofire v. United States, 164 U. S. 657, 41 L. ed. 588, 17 Sup. Ct. Rep. 212; Delaney v. Schuette, 49 Wis. 366, 5 N. W. 796; State ex rel. Anderson v. Kempf, 69 Wis. 470, 2 Am. St. Rep. 753, 34 N. W. 226; Barber Asphalt Pav. Co. v. Denver, 19 C. C. A. 139, 36 U. S. App. 499, 72 Fed. 336; People ex rel. Hayes v. Bates, 11 Mich. 368, 83 Am. Dec. 745; Zeiler v. Chapman, 54 Mo. 502; Motley v. Wilson, 26 Ky. L. Rep. 1011, 82 S. W. 1023; Sullivan v. Orange County, 59 Fla. 630, 52 So. 517; Harris v. Whitcomb, 4 Gray, 433; Taylor v. Cundriff, — Ky. —, 118 S. W. 379; Powers v. Hitchcock, 129 Cal. 325, 61 Pac. 1076; Dooley v. Van Hohenstein, 170 Ill. 630, 49 N. E. 193.

The question of the necessity for the drain is one for the drainage board, and not for the courts. Missouri P. R. Co. v. Omaha, 117 C. C. A. 12, 197 Fed. 516.

The purpose in granting to the drainage board power to say what is necessary to be done, as well as to determine the best way to do it, was to provide means to carry the law into effect and accomplish the results sought; and riparian owners must adapt themselves to the situation, and use their property so as not to obstruct or prevent the board from doing lawful acts in removing obstructions to the reasonable use of this water course. Elliott, Railroads, 2d ed. 788–b; Angell, Watercourses, 7th ed. 465–b; Chicago, B. & Q. R. Co. v. People, 212 Ill. 103, 72 N. E. 219, affirmed in 200 U. S. 561, 50 L. ed. 596, 26 Sup. Ct. Rep. 341, 4 Ann. Cas. 1175; Chicago & N. W. R. Co. v. Drainage Dist. 142 Iowa, 607, 121 N. W. 193; Mason City & Ft. D. R. Co. v. Board of Supervisors, 144 Iowa, 10, 121 N. W. 39, 116 N. W. 805; Chicago & E. R. Co. v. Luddington, 175 Ind. 35, 91 N. E. 939, 93 N. E. 273; Wabash R. Co. v. Jackson, 176 Ind. 487, 95 N. E. 311, 96 N. E. 466; State ex rel. Hutter v. Papillion Drainage Dist. 89 Neb. 808, 132 N. W. 398; Chicago, B. & Q. R. Co. v. Appanoose County, 170 Fed. 665, 31 L.R.A.(N.S.) 1117, 104 C. C. A. 573, 182 Fed. 291; New Orleans Gaslight Co. v. Drainage Commission, 197 U. S. 453, 49 L. ed. 831, 25 Sup. Ct. Rep. 471; West Chicago Street R. Co. v. Illinois, 201 U. S. 506, 50 L. ed. 845, 26 Sup. Ct. Rep. 518; Union Bridge Co. v. United States, 204 U. S. 364, 395, 399, 401, 51 L. ed. 523, 537, 539, 540, 27 Sup. Ct. Rep. 367; United States v. Monongahela Bridge Co. 160 Fed. 713, 216 U. S. 177, 54 L. ed. 435, 30

Sup. Ct. Rep. 356; Bacon v. Walker, 204 U. S. 311, 317, 51 L. ed. 499, 502, 27 Sup. Ct. Rep. 289; Welch v. Swasey, 214 U. S. 91, 53 L. ed. 923, 29 Sup. Ct. Rep. 567; Northern P. R. Co. v. Minnesota, 208 U. S. 583, 52 L. ed. 630, 28 Sup. Ct. Rep. 341; St. Paul, M. & M. R. Co. v. Minnesota, 214 U. S. 497, 53 L. ed. 1060, 29 Sup. Ct. Rep. 698; Chicago, M. & St. P. R. Co. v. Minneapolis, 232 U. S. 430, 58 L. ed. 671, 34 Sup. Ct. Rep. 400; St. Louis Southwestern R. Co. v. Miller Levee Dist. 197 Fed. 815.

The rule of damages here is the same as in cases of lowering tracks, opening streets, etc. Grafton v. St. Paul, M. & M. R. Co. 16 N. D. 313, 22 L.R.A.(N.S.) 1, 113 N. W. 598, 15 Ann. Cas. 10; State ex rel. Minneapolis v. St. Paul, M. & M. R. Co. 98 Minn. 380, 28 L.R.A. (N.S.) 298, 120 Am. St. Rep. 581, 108 N. W. 261, 8 Ann. Cas. 1047, 214 U. S. 497, 53 L. ed. 1060, 29 Sup. Ct. Rep. 698; Chicago, M. & St. P. R. Co. v. Minneapolis, 115 Minn. 460, 51 L.R.A.(N.S.) 236, 133 N. W. 169, Ann. Cas. 1912D, 1029, affirmed in 232 U. S. 430, 58 L. ed. 671, 34 Sup. Ct. Rep. 400; Cincinnati, I. & W. R. Co. v. Connersville, 218 U. S. 336, 54 L. ed. 1060, 31 Sup. Ct. Rep. 93, 20 Ann. Cas. 1206; Mutual Loan Co. v. Martell, 222 U. S. 225, 56 L. ed. 175, 32 Sup. Ct. Rep. 74, Ann. Cas. 1913B, 529; Atlantic Coast Line R. Co. v. Goldsboro, 232 U. S. 548, 58 L. ed. 721, 34 Sup. Ct. Rep. 364; Wabash R. Co. v. Railroad Commission, 176 Ind. 428, 95 N. E. 673; Morgan v. Schusselle, 228 Ill. 106, 81 N. E. 814; People ex rel. Thompson v. Gunzenhauser, 237 Ill. 262, 86 N. E. 669; People ex rel. Smerdon v. Crews, 245 Ill. 318, 92 N. E. 245; Highway Comrs. v. Lake Fork Special Drainage Dist. Comrs. 246 Ill. 388, 92 N. E. 902; People ex rel. Parmenter v. Fenton & T. R. Co. 252 Ill. 372, 96 N. E. 864; Jones v. Sanitary Dist. 252 Ill. 591, 97 N. E. 210; Strange v. Cleveland, C. C. & St. L. R. Co. 245 Ill. 246, 91 N. E. 1038.

The rights for which the board here contends existed at common law, and do not depend upon statutory provisions. Chicago, B. & Q. R. Co. v. People, 212 Ill. 103, 72 N. E. 219, 200 U. S. 561, 50 L. ed. 596, 26 Sup. Ct. Rep. 341, 4 Ann. Cas. 1175.

A railroad company in constructing its road over water courses must make suitable bridges and culverts for carrying off the water. This duty is imperative, and rests upon a railroad just the same as upon a private owner who interferes with a water-course. Kankakee & S.

R. Co. v. Horan, 131 Ill. 308, 23 N. E. 621; Cleveland v. Augusta, 102 Ga. 233, 43 L.R.A. 638, 29 S. E. 584; Lake Erie & W. R. Co. v. Cluggish, 143 Ind. 347, 42 N. E. 743; Lake Erie & W. R. Co. v. Smith, 61 Fed. 885; Indiana ex rel. Muncie v. Lake Erie & W. R. Co. 83 Fed. 287; State ex rel. Minneapolis v. St. Paul, M. & M. R. Co. 35 Minn. 114, 59 Am. Rep. 313, 28 N. W. 3.

There is a distinction between an incidental injury to private property rights, lawfully and reasonably exercised, and the taking of private property for public use, within the meaning of the Constitution. Northern Transp. Co. v. Chicago, 99 U. S. 635, 642, 25 L. ed. 336, 338; Mugler v. Kansas, 123 U. S. 623, 669, 31 L. ed. 205, 213, 8 Sup. Ct. Rep. 273; New York & N. E. R. Co. v. Bristol, 151 U. S. 556, 567–571, 38 L. ed. 269, 272–274, 14 Sup. Ct. Rep. 437; Chicago, B. & Q. R. Co. v. Chicago, 166 U. S. 979, 41 L. ed. 979, 17 Sup. Ct. Rep. 581; Gibson v. United States, 166 U. S. 269, 271, 276, 41 L. ed. 996, 998, 1002, 17 Sup. Ct. Rep. 578; Scranton v. Wheeler, 179 U. S. 141, 164, 45 L. ed. 126, 137, 21 Sup. Ct. Rep. 48; New Orleans Gaslight Co. v. Drainage Commission, 197 U. S. 453, 49 L. ed. 831, 25 Sup. Ct. Rep. 471; Mills v. United States, 12 L.R.A. 673, 46 Fed. 738; United States v. Lynah, 188 U. S. 445, 47 L. ed. 539, 23 Sup. Ct. Rep. 349; Bedford v. United States, 192 U. S. 217, 48 L. ed. 414, 24 Sup. Ct. Rep. 238; Manigault v. Springs, 199 U. S. 473, 50 L. ed. 274, 26 Sup. Ct. Rep. 127; Gibbons v. Ogden, 9 Wheat. 1, 6 L. ed. 23; Hannibal & St. J. R. Co. v. Husen, 95 U. S. 465, 472, 24 L. ed. 527, 530; Patterson v. Kentucky, 97 U. S. 501, 503, 24 L. ed. 1115, 1116; Morgan's L. & T. R. & S. S. Co. v. Board of Health, 118 U. S. 455, 464, 30 L. ed. 237, 241, 6 Sup. Ct. Rep. 1114; Hennington v. Georgia, 163 U. S. 299, 309, 41 L. ed. 166, 171, 16 Sup. Ct. Rep. 1086; New York, N. H. & H. R. Co. v. New York, 165 U. S. 628, 631, 41 L. ed. 853, 854, 17 Sup. Ct. Rep. 418.

The adequacy of the bridge and the opening under it for the passing of the water of the creek at the time the bridge was built, does not determine the obligations of the railroad company to the public for all time. The railroad company must use the stream so as not to injure others; and this is a continuing obligation. Cooke v. Boston & L. R. Corp. 133 Mass. 188; Lake Erie & W. R. Co. v. Cluggish, 143 Ind. 347, 42 N. E. 743; Indiana ex rel. Muncie v. Lake Erie

& W. R. Co. 83 Fed. 287; New Orleans Gaslight Co. v. Drainage Commission, 197 U. S. 453, 49 L. ed. 831, 25 Sup. Ct. Rep. 471.

The law touching damages for crossing highways in existence is applicable here.   1 Elliott, Roads & Streets, § 48, pp. 62, and 243, note; 2 Elliott, Roads & Streets, §§ 1010, 1011; 3 Elliott, Railroads, 2d ed. 1092, 1105.

Mandamus is the proper remedy to compel the performance of a duty.   1 Elliott, Railroads, 639; 2 Elliott, Railroads, 698; 3 Elliott, Railroads, 1106; Chicago, B. & Q. R. Co. v. People, 212 Ill. 103, 72 N. E. 219, affirmed in 200 U. S. 561, 50 L. ed. 596, 26 Sup. Ct. Rep. 341, 4 Ann. Cas. 1175.

It is the duty of a railroad company crossing a highway or a stream to preserve the same in a condition of usefulness and safety.   Chicago & E. R. Co. v. Luddington, 175 Ind. 35, 91 N. E. 939, 93 N. E. 273 and authorities cited; 3 Elliott, Railroads, 2d ed. 1092, 1105; Elliott, Roads & Streets, 2d ed. 779, 780; State ex rel. Minneapolis v. St. Paul, M. & M. R. Co. 98 Minn. 380, 28 L.R.A.(N.S.) 298, 120 Am. St. Rep. 581, 108 N. W. 261, 8 Ann. Cas. 1047, 214 U. S. 497, 53 L. ed. 1060, 29 Sup. Ct. Rep. 698; State ex rel. Duluth v. Northern P. R. Co. 98 Minn. 429, 108 N. W. 269, 208 U. S. 583, 52 L. ed. 630, 28 Sup. Ct. Rep. 341; Chicago, M. St. P. R. Co. v. Minneapolis, 115 Minn. 460, 51 L.R.A.(N.S.) 236, 133 N. W. 169, Ann. Cas. 1912D, 1029, 232 U. S. 430, 58 L. ed. 671, 34 Sup. Ct. Rep. 400.

The police power of the state extends to all matters where the general public welfare, morals, and health of the community are involved. Old Orchard Beach R. Co. v. York County, 79 Me. 386, 10 Atl. 113; Chicago & N. W. R. Co. v. Chicago, 140 Ill. 309, 29 N. E. 1109; Chicago, B. & Q. R. Co. v. Chicago, 149 Ill. 457, 37 N. E. 78, 166 U. S. 226, 41 L. ed. 979, 17 Sup. Ct. Rep. 581; Chicago, M. & St. P. R. Co. v. Milwaukee, 97 Wis. 418, 72 N. W. 1118; State ex rel. St. Paul, M. & M. R. Co. v. District Ct. 42 Minn. 247, 7 L.R.A. 121, 44 N. W. 7; 3 Elliott, Railroads, 1105, 1106, 1092; Angell, Watercourses, 7th ed. 465–b; Chicago, B. & Q. R. Co. v. People, 212 Ill. 103, 72 N. E. 219; Grafton v. St. Paul, M. & M. R. Co. 16 N. D. 313, 22 L.R.A.(N.S.) 1, 113 N. W. 598, 15 Ann. Cas. 10; State ex rel. Minneapolis v. St. Paul, M. & M. R. Co. 98 Minn. 380, 28 L.R.A.(N.S.) 298, 120 Am. St. Rep. 581, 108 N. W. 261, 8 Ann. Cas. 1047; 2 Farnham, Waters,

§ 221, p. 1065; Chicago, B. & Q. R. Co. v. Appanoose County, 31 L.R.A.(N.S.) 1117, 104 C. C. A. 573, 182 Fed. 291; Cache River Drainage Dist. v. Chicago & E. I. R. Co. 255 Ill. 403, 99 N. E. 635; People ex rel. Peeler v. Chicago & E. I. R. Co. 262 Ill. 501, L.R.A. 1915B, 486, 104 N. E. 831.

BRUCE, J. (after stating the facts as above). We have carefully examined the evidence as to the fifth finding, and are fully satisfied that the obstruction furnished by the bridge is negligible. T. R. Atkinson, the state engineer who made the original survey, and who has since been in charge of the work, testifies that no change has occurred in the channel since 1907; that no excavation will be required under the bridge; that he never saw an ice gorge at the bridge; that under the bridge and over the right of way the water is swifter than for a considerable distance either above or below the bridge; that the pilings, in fact, increase and accelerate the flow of water at the bridge and increase its velocity.

These facts are borne out by the testimony of several other witnesses, and all that can be derived from the testimony of the other witnesses is that stated in defendant's proposed findings Nos. 18, 19, and 21, and which are as follows: "That the Mouse river varies in width from 150 to 200 feet; that it is a shallow stream, varying from about 2 inches to about 3 feet in depth; that it has a mud bottom on which grow, during the summer season, weeds, grass, reeds, and rushes. During the winter season it freezes in many places to the bottom, freezing the earth and weeds and frequently earth in the ice; that when the snow and ice melt in the spring the ice breaks up; the most of it follows the course of the stream, some of it lodges upon the banks where the ice melts, (and no doubt, according to our view of the evidence, but not according to the proposed finding, some of it is impeded by the piles, and tends to temporarily, at least, obstruct the flow of the water). The melting ice leaves more or less *débris* in the stream and on the banks where the ice melts. The bottom of the stream is of varying elevation. The bottom of the stream across defendant's right of way is lower and the current is swifter there, and the water has a greater depth, than at any point for more than half a mile above the bridge and for more than a mile below the bridge; that is, there is less deposit

in the stream across defendant's right of way than within the distances just stated. The said stream has a fall of 1.65 feet in the 5 miles above the bridge, and the same fall in the 5 miles below the bridge.

In the spring of 1906 or 1907 when the ice broke up, it lodged against the piling, and backed up for about a quarter of a mile, and remained there for about a week. In a later year the ice lodged against the piling, and backed up for a few yards, and remained there for a day or two. The last three years it has not blocked against the piling; that no complaint has been made to the railroad company of ice jams; that where bridges supported by piling such as this bridge are in danger from ice jams, they are protected by driving a piling above each row up stream for protection; that it has never been found necessary to drive such a protecting piling in this stream; that the piling bears no marks of having been jammed by ice; that ice obstructions are readily removable by breaking the cakes of ice, or, in case of an extensive gorge, by dynamiting the same; that one of the chief purposes of the proposed drain, if not its chief purpose, is to remove from the channel of the stream the *débris* left in the channel of the stream by the ice and from other causes; that the earth under the bridge as it now is could be removed without impairing the strength of the bridge, and without imposing any additional expenses upon the railway company to strengthen its bridge.

One cannot, indeed, read the record in this case without being impressed with the belief that the action at bar is one for the benefit of the contractor, and not of the drainage board or of the counties interested, and that the proceedings were brought not for removing the nuisance of the alleged obstructions to the stream as a drainage conduit, but to allow the dredge and houseboats of the contractor to pass under the same. It is to be remembered, indeed, that the river is not navigable, and that the right of way of the railway company is owned in fee by that company. It is also to be remembered that the railway company is engaged in an important public service and in the carriage of not only intra, but inter, state passengers, freight, and mail. The question, indeed, is an important one. It is extremely necessary to the public that streams shall be crossed by railways, and that the bridges and approaches shall be as thoroughly and permanently constructed as is possible. The right of both the lower and upper riparian owners to the

unimpeded passage of the water, as far as the water is concerned, is of course, conceded, even in unnavigable streams, as well as the right of the public to condemn property for drainage purposes if such condemnation is necessary. Where, however, the natural flow is not to any material extent impeded, and where, as we believe is the fact in this case, a comparatively small expenditure in the removal of piling could remove the obstruction without requiring the removal of the railroad bridge, and where, indeed, the only purpose of the order seems to be to allow the dredges and machinery which are used in digging or deepening the channel to pass by,—in other words, where the only purpose of the proceeding is to lessen the cost of a portion of the digging and to benefit the contractor,—it seems hardly right to interfere with the property rights of private owners. The case, indeed, is no different than if the railroad bridge had been a municipal bridge, a mill, a farmer's bridge, or some other similar structure.

It is stipulated, indeed, in this case, that the earth can be removed across the right of way under the bridge for $500 without disturbing the piling. The piles can be removed at a cost of $350. If other piling must be put in, it is stipulated that this can be done for $350. In other words, the evidence seems to show that the railway company for an expense of $850 could remove the dirt so that the channel would be in conformity with the rest of the drainage, and also remove the piling so that there would be no obstruction to the ice, if obstruction there ever was. It has, however, been ordered to remove the whole superstructure at an additional cost of $800, not in order that the stream may be free from obstruction and that the adjacent country may be drained, but that the particular dredges and flatboats of the contractor may be accommodated. Where, indeed, will be the limit?

The distinction between a navigable and an unnavigable stream has been long recognized. The adjacent property owner must take into consideration the unnavigability, and the duty of accommodating himself to that unnavigability. He has the right, however, to assume that in the case of an unnavigable stream the rights of the riparian owners are the only ones which he must respect. If, for instance, the railroad bridge was 300 feet above a stream, would it be necessary to remove such bridge merely because some contractor had constructed some modern derrick whose mast projected hundreds of feet into the air?

We find, indeed, no case in the books where any such high-handed procedure has been tolerated, except those in which the railroad company was assessed for benefits on account of the construction of improvements, and on such assessment was given credit for the injury to its property. Lake Erie & W. R. Co. v. Cluggish, 143 Ind. 347, 42 N. E. 743.

The case of State ex rel. Fadley v. Henry County, 157 Ind. 96, 60 N. E. 939, is very much in point. In it it was held that "mandamus will not lie at the suit of the drainage commissioner against the county commissioners and township trustees to compel them to remove iron bridges over a water course in the county, in order that a contractor appointed by the commissioners to drain the water course may proceed with his work, though the necessary dredging machines cannot pass under or around the bridges." "If their removal," said the court, "became necessary in order to enable the contractor to successfully carry out his contract, it certainly was no more the duty of the board of commissioners or township trustees to incur the expense of their removal than it would have been to cause the removal of trees or other obstructions along the course or route of the proposed drain. Counsel for appellant relies in support of his contention upon the decision of this court in the case of Lake Erie & W. R. Co. v. Cluggish, supra. In that case the commissioner of drainage, together with the contractor, sought to enjoin the railroad company from interfering with or preventing them from removing a bent supporting a bridge belonging to the railroad company. It was not contended in that appeal that the company should remove the bent and open the bridge at its own expense in order to accommodate the contractor in dredging in or along the stream spanned by the railroad bridge. No question of that character was presented or decided in that cause. The claim of the drainage commissioner and the contractor was that they had the right, in the construction of the drain, to go through the bridge, and whatever damages resulted therefrom to the railroad company must be considered as satisfied by reason of a certain reduction which had been made in the amount of benefits assessed against the company in the proceedings to establish the ditch. The question presented and decided on the facts in that appeal, and the one here involved, are materially different, and consequently that decision lends no support to appellant's contention.

The petition does not state a cause of action against appellees, or either of them. Therefore the demurrer of each was properly sustained."

We have carefully read the case of Chicago, B. & Q. R. Co. v. Illinois, 200 U. S. 561, 50 L. ed. 596, 26 Sup. Ct. Rep. 341, 4 Ann. Cas. 1175, and in which case it was held that the railway company could be compelled to pay for the cost of removing and reconstructing its bridge, but could not be compelled to pay for the cost of removing the soil and widening the channel. That case, however, is materially different from the one at bar. It was shown that the bridge would materially interfere with *the increased flowage of the stream,* and it was held that it was the duty of the railway company crossing a natural water course to adjust itself to the proper uses of that water course, and that this was a continuing duty. In the case at bar we believe that it has been shown that the removal of the bridge as a whole, and especially of the super-structure, is not necessary to the accommodation of the increased flowage of the stream, but that such can be accommodated in a much cheaper manner, and, at the most, by the removal of some dirt and piles.

We are ready to concede the propositions that if a railway company constructs its tracks over a highway it must restore the same, and the duty is continuing, and that if a railway crosses an unnavigable stream which serves for the drainage of any given area of land it must accommodate itself to the drainage that may be reasonably anticipated, both present and prospective. It by no means follows, however, from these concessions, that a railroad which crosses an unnavigable stream is held to the same liability as if the stream were navigable, and that it must accommodate itself to the traffic of barges and dredges. It may not, in short, obstruct the flow of the water and of the drainage area, even though that flow is the result of modern improvements and the draining into the stream of areas which, though belonging to the general district, did not formerly flow readily into the stream, and for the accommodation of which the improvements are made. This, however, is as far as its duties go, and all that can be required of the company in this case is that it shall remove its obstructions to the flow of the water. It is not its duty to make the stream navigable. It is perfectly clear to us, though, that the removal of some of the piling may be necessary, and this work the defendant seems to be ready to do.

The removal of the superstructure, however, is not necessary to the free flow of the waters of the river nor to the efficiency of the drainage project.

It is really difficult to see how this small overflowage of upper lands, if overflowage there was, would entitle the drainage commissioners to proceed against the defendants in the present proceeding. It is true that the obstructing the flow of a running stream, whereby land of other riparian owners is injured, is the creation of a nuisance, which may be abated by proper proceedings and by the interested parties; but the proceedings in the case at bar are not of this nature nor are the plaintiffs the proper parties to bring them. The commissioners, in short, are not public health officers or agents of the riparian owners, but constitute a particular board which is created for a specific purpose, and whose duties are defined and limited by the statute which creates them.

The judgment of the District Court is reversed, and the cause remanded, with directions to quash the writ.

## On Rehearing.

BRUCE, J. A petition for a rehearing has been filed, which calls our attention to a specific finding of the trial court that the piles of the bridge in question did in fact impede the natural flowage of the river, and which insists that since the proceeding before us is one in mandamus we are bound by such finding of fact upon this appeal. Counsel is entirely correct in this contention, and to that extent we erred, and must modify our original opinion, as there was at least some evidence in support of the finding.

Counsel also complains of our statement that the action was brought for the benefit of the contractors, rather than of the drainage board, and calls our attention to the fact that in its original contract the board had agreed to be responsible for the removal of the bridges. In this also he is correct, and our language was, perhaps, unfortunate. Instead of saying, as we did, that it was our belief that the action was brought "for the benefit of the contractor, and not of the drainage board or of the counties interested," we should have been content with the latter portion of the statement, which was "that the proceedings were brought

not for removing the nuisance of the alleged obstructions to the stream as a drainage conduit, but to allow the dredge and houseboats of the contractor to pass under the same."

Although these concessions do not materially affect our ultimate conclusions, they must and should result in a modification of the writ, rather than in the quashing thereof, which we heretofore ordered.

Counsel also further emphasizes the cases of Chicago, B. & Q. R. Co. v. Illinois, 200 U. S. 561, 50 L. ed. 596, 26 Sup. Ct. Rep. 341, 4 Ann. Cas. 1175, affirming 212 Ill. 103, 72 N. E. 219, and Lake Erie & W. R. Co. v. Cluggish, 143 Ind. 347, 42 N. E. 743, together with other additional cases and claims that the easement of drainage along and through an unnavigable water course carries with it the easement of navigating dredges and barges on such course and through bridges which are lawfully built and which otherwise are adequate and accommodated to fully carry off the waters of the drain, and to tear down such bridges at the expense of the owner in order to allow the boats and dredges to pass, even though they accommodate such waters, provided that the use of such dredges and barges is reasonably necessary to the economical construction of the drain.

We have carefully examined the cases cited by counsel for respondent, and in none of them do we find authority for the whole contention of counsel; that is to say, that it is the duty of the railway company not only to make provision for the drainage of the stream, but for its navigability also. It may be true that drainage is an exercise of the police power, and that under that so-called power, and in the promotion of the public health and interest, the public may require the removal of all artificial obstructions to the drainage of non-navigable rivers. It by no means, however, follows that it may compel one property owner to bear a cost of the improvement of the stream or of the drain, which is not borne by others. It may be conceded that the use of the flatboats was economical and intended to reduce the cost of the improvement of the stream to all of the property owners who were assessed for the improvement. Why, however, a railway company or a municipality should be compelled to remove at its own expense valuable property which is not an obstruction to the stream, so that the cost of the improvement may be reduced to these others, it is difficult for us to see. None of the cases cited by counsel in fact bear out his proposition. The case

of Chicago, B. & Q. R. Co. v. Illinois, supra, on which much reliance is placed, certainly does not. In this case it was shown that the buttresses of the bridge and the foundations of the bridge obstructed the drainage, and were themselves an obstruction in the stream. They bore the same relation in that case that the piles do in the present case. All that was attempted to be done was to compel the removal of these obstructions, not that the boats might pass the bridge, but that the drain itself might be cleared and excavated. It was never intended or claimed that, if the buttresses could have been removed and the channel broadened without tearing down the bridge, the removal of the whole bridge could or would have been ordered; that is to say, that the removal of the whole bridge could or would have been ordered, not because the buttresses interfered with the drainage or themselves created or constituted an obstruction to the stream, but because the superstructure of the bridge prevented the passage of the dredges and boats.

The case of New Orleans Gaslight Co. v. Drainage Commission, 197 U. S. 452, 49 L. ed. 831, 25 Sup. Ct. Rep. 471, is also not in point. In that case gas pipes were constructed in the street of a city, the fee of which was in the public. The removal of these gas pipes was necessary in order that a drain might be constructed. In other words, the gas pipes were in the channel of the drain. All that the court held was that the gas company could be compelled to remove its pipes.

The case of Scranton v. Wheeler, 179 U. S. 141, 45 L. ed. 126, 21 Sup. Ct. Rep. 48, is also not in point. In this case navigation was involved. All that was held was that a pier which is erected by the United States on land submerged under *navigable water,* the title to which is owned by the riparian proprietor, and which permanently destroys such proprietor's "access to the navigable waters, does not entitle him to any compensation, under U. S. Const. 5th Amend. prohibiting property to be taken for public use without just compensation, since the title to the land, whether owned by the riparian owner or by the state, was acquired subject to the rights which the public have in the navigation of such waters."

The case, too, of Lake Erie & W. R. Co. v. Cluggish, 143 Ind. 347, 42 N. E. 743, on which counsel for respondent bases so much of his argument, in no way supports his proposition. Counsel ignores the fact that this case was commented on and explained in the later case of

State ex rel. Fadley v. Henry County, 157 Ind. 96, 60 N. E. 939, and that in this later case the court said.: "After giving the required notice the drainage commissioner is by the statute authorized to let the construction of the ditch to the lowest and best bidder. Burns's Rev. Stat. 1894, § 5626. In this case, however, for some reason, it appears, it was stipulated in the contract that the contractor should be relieved of the expenses and duty of removing these bridges. But conceding, without deciding, that the relator had the authority to embrace such a stipulation in the contract, he certainly by so doing could not cast the burden and duties upon the appellees, or either of them, of removing the bridges at the expense of the public. The mere fact that the highways of which the bridges were essential parts may have been assessed with benefits in the drainage proceedings would not make it the duty of appellees, or any of them, to remove these bridges. If their removal became necessary in order to enable the contractor to successfully carry out his contract, *it certainly was no more the duty of the board of commissioners or township trustees to incur the expense of their removal than it would have been to cause the removal of trees or other obstructions along the course or route of the proposed drain.* Counsel for appellant relies in support of his contention upon the decision of this court in the case of Lake Erie & W. R. Co. v. Cluggish, supra. In that case the commissioner of drainage, together with the contractor, sought to enjoin the railroad company from interfering with or preventing them from removing a bent supporting a bridge belonging to the railroad company. *It was not contended in that appeal that the company should remove the bent and open the bridge at its own expense in order to accommodate the contractor in dredging in or along the stream spanned by the railroad bridge.* No question of that character was presented or decided in that cause. The claim of the drainage commissioner and of the contractor was that they had the right, in the construction of the drain, to go through the bridge, and whatever damages resulted therefrom to the railroad company must be considered as satisfied by reason of a certain reduction which had been made in the amount of benefits assessed against the company in the proceedings to establish the ditch. The *question presented and decided on the facts in that appeal, and the one here involved, are materially different, and consequently that decision lends no support to appellant's contention."*

The case of State ex rel. Fadley v. Henry County, supra, indeed, holds fairly and squarely against the contention of respondent. Its holding is: "Mandamus will not lie at the suit of the drainage commissioner against the county commissioners and township trustees to compel them at public expense to remove iron bridges over a water course in the county, in order that the contractor appointed by the drainage commissioner to construct the ditch may proceed with the work, though the necessary dredging machines can neither pass under nor around the bridges." The case, it is true, is one against the county commissioners, and involves a municipal bridge, but it must be clear to all that if the drainage board is held by this court to have the power to compel the removal of a railroad bridge at the expense of the railway company under circumstances such as those before us, it must also be conceded to have the power to compel the removal of municipal bridges at the public or municipal expense.

The riparian owners whose rights were injuriously affected would undoubtedly have had the power to require the company to remove the artificial obstructions to the flow of the water, and, if it refused to comply with the request, the power to do so themselves at the expense of the company. The commissioners, perhaps, had the same right where the obstructions were artificially created, that is to say, to require the removal of artificial obstructions, though the removal of the dirt itself should have been done at the expense of the drainage fund, as it was for that very purpose that the fund was created. Where, however, is there authority for holding that the company should or can be compelled to remove at its own expense a structure which was lawfully erected in furtherance of a quasi-public undertaking, and which does not in any way impede the passage of the water?

An examination of the record in the case at bar can indeed lead to but one conclusion, and that is that what the commissioners principally desired was the removal of the bridge to allow the dredges to pass, and not the removal of the bridge to accommodate the flowage of the river. The stipulated facts show conclusively that the removal of the superstructure was not necessary to the removal of the obstruction to the flowage, and that the railway company could, if left alone, have removed that obstruction to the flowage for at least $800 less than the cost of the removal of the whole bridge. The stipulated facts are as

follows: "That said trestle and bridge is built upon piles and timbers driven into and sunk in the bed of the said river and in the banks thereof adjacent thereto; that said trestle and bridge so built as aforesaid is now owned, controlled, and operated by the said defendant as a part of its said line and as the means and method of crossing said river; that said bridge and trestle consists of the following parts, that is to say: (1) The piles and other timbers sunk, driven, or extending into and through the water and into the bed of the stream or other ground adjacent thereto; (2) the superstructure consisting of stringers laid on caps on top of said piles, which said stringers support the ties, rails, and other materials and substances which may be called the superstructure, and constitutes the roadway proper upon which the trains of the defendant are operated; that said superstructure has no support other than, and could not stand or exist or serve any purpose without, the support of the piling referred to in No. 1 *unless otherwise supported.* That said piles forming the support of the superstructure are set in rows of five each, with 14 feet 6 inch centers, that is, the centers of the piles in said rows are 14 feet and 6 inches from the center of the closest adjacent row; that said piles average from 9 inches to 18 inches in diameter, and are sunk or driven approximately 22 feet into the ground; that the greatest depth of water in the stream at the bridge is approximately 4 feet, and that the surface width is approximately 125 feet." It is further stipulated "that the piling now supporting the bridge are driven to such a depth that the removal of the earth across the right of way, under the bridge, without removing or disturbing the piling to the depth and width, could be done by the joint drainage board, and not impair its strength or carrying capacity, and would not impose any expense on the railroad company in repairing or maintaining the bridge. . . . That it would be possible to excavate earth material in the channel of said stream underneath and about the bridge of the defendant at an expense of $500, such work to be done by men upon small boats or wading in the channel, or other methods; that it would be possible to remove the piling and other supports for said bridge at an expense of $300, and substitute therefor piling and supports which would conform to the requirements of said drainage board, at the expense of $350; that the cost of removing the superstructure and replacing it upon the piles and supports placed as required by the said board

is the sum of $800.  .  .  .   That the defendant's *superstructure over the Mouse river at the point in question is so located that it never has obstructed the natural water flow* of said river at any time; that said superstructure is supported by a large number of boats or rows of piling, eighty-seven in number; that by reason of the manner of supporting said superstructure a large opening is left underneath the same, so that all water which accumlates in said river *can and always has passed under said superstructure without interference other than by said rows of piling;* that all the additional flowage resulting from the proposed improvements can and will flow under said superstructure freely and without interference therefrom."

Much is said by counsel concerning the right of the drainage board to use economical means of construction, and to thus lessen the cost of such construction to those who would be assessed for the improvement. Why, however, in the case of a drain which is primarily for the benefit of the lands of the abutting owners, and to enhance the value thereof, and for the benefit only of those abutting owners, a common carrier engaged in both intra and inter state commerce should be compelled to pay for the cost of the economical method, and to remove a structure which is not only property, but which is constructed in furtherance of its franchise and of its public duties, and which is for the benefit of the public as much as for itself, it is difficult to see. Expenses involved by reason of an economical improvement should, it would seem, be borne by those benefited thereby. Any other rule would put a stop to the construction of durable bridges across all of our water courses, not merely by railway companies, but by municipalities as well, as in such case the municipalities would and could never know what future machinery might not be invented and become economical and necessitate the tearing down of the improvements which they might make.

The title of the railway company in the stream and in the land over which the stream runs is a title in fee, subject only to the right of the upper riparian owners to the free flowage of the water thereover, and of the lower riparian owners also to have that flowage unobstructed. The rule is laid down in the case of Bigelow v. Draper, 6 N. D. 152, 69 N. W. 570, where it is said: "Section 210 of the Constitution does not prohibit the diversion of a portion of a non-navigable water

course, where such diversion is needed for a public use, the substantial integrity of the stream not being thereby impaired. Under the statute of this state, the right of the riparian owner to have a natural stream flow over his land is such property as may be condemned for railroad purposes." "It is next urged that the statutes relating to eminent domain do not authorize the condemnation of the riparian rights of the owner of land through which flows a water course. The provisions of our statutes on this subject do not sustain this contention. Rev. Codes, § 5958, Subdiv. 6, declares that 'all classes of private property not enumerated may be taken for public use when such taking is authorized by law.' Rev. Codes, § 2947, subdiv. 3, provides that railroad corporations authorized to operate or maintain railroads in this state shall have power to acquire, under the provisions of the chapter on eminent domain, all such real estate and other property as may be necessary for the construction, maintenance, and operation of the road, etc. Here is distinct authority to condemn any kind of property that is necessary. See also 1 Rorer, Railways, 444; Old Colony & F. River R. Co. v. Plymouth County, 14 Gray, 155. Surely, it will not here be claimed that the riparian rights of these defendants do not constitute property. If they are not property, on what principle can the defendants claim damages for their destruction? Indeed, there is eminent authority for the doctrine that such a right is real estate. Johnson v. Jordan, 2 Met. 234. See also St. Helena Water Co. v. Forbes, 62 Cal. 182, 45 Am. Rep. 659. That real property may be condemned does not admit of question. Rev. Codes, § 2947, subdiv. 3; Id. § 5958, subdiv. 1. Under statutes similar to ours, riparian rights have been condemned. St. Helena Water Co. v. Forbes, supra. See also Rumsey v. New York & N. E. R. Co. 133 N. Y. 79, 15 L.R.A. 618, 28 Am. St. Rep. 600, 30 N. E. 654. . . . That the company could, under our statute, condemn the riparian rights without also taking the fee of these lands, does not admit of doubt. See St. Helena Water Co. v. Forbes, supra. It is also contended that if our statute permits the diversion of a water course, such a statute is repugnant to the state Constitution. Section 210 of the Constitution provides that 'all flowing streams and natural water courses shall forever remain property of the state for mining, irrigation, and manufacturing purposes.' It was conceded in the argument of this case that this section

of the original law does not impair the property rights of a riparian owner in the waters of a natural stream. At common law the owner of land through which a non-navigable stream flowed was possessed of the title to the bed of the stream, as well as the right to a reasonable use of the water. The land under the water was his. The right to a reasonable use of the stream was as much his property as the land itself. The course of the stream could not be so diverted as to cause it to cease to flow in its accustomed channel upon his property. Gould, Waters, § 4; Angell, Watercourses, §§ 1–4; Green Bay & M. Canal Co. v. Kaukauna Water Power Co. (Patten Paper Co. v. Kaukauna Water Power Co.) 90 Wis. 370, 28 L.R.A. 443, 48 Am. St. Rep. 937, 61 N. W. 1121, 63 N. W. 1019 and cases cited. These doctrines of the common law were in force in the territory of Dakota at the time of the adoption of the Constitution of this state. By virtue of them, the riparian owners in the territory were vested with the specified property rights in the bed of all natural water courses, and in the water itself. Such rights were under the protection of the 14th Amendment to the Federal Constitution, which protects property against all state action that does not constitute due process of law. It follows that § 210 of the state Constitution would itself be unconstitutional in so far as it attempted to destroy those vested rights of property, if it should by construction be given a scope sufficiently wide to embrace such matters. For this reason we feel constrained to hold, despite its broad language, that § 210 was not framed to devest the rights of riparian owners in the waters and bed of natural water courses in the state."

In addition to this we have § 4808, Rev. Codes 1905, which provides: "The owner of land in fee has the right to the surface and everything permanently situated beneath or above." Section 210 of the state Constitution provides: "All flowing streams and natural water courses shall forever remain the property of the state for mining, irrigating, and manufacturing purposes." Section 1837, Rev. Codes 1905, provides: "Drains may be laid along, within the limits of, or across, any public road, and when so laid out and constructed, or when any road shall thereafter be constructed along or across any drain, it shall be the duty of the board of county commissioners, or township supervisors, as the case may be, to keep the same open and free from

all obstructions. A drain may be laid along any railroad when necessary, *but not to the injury of such road;* and when it shall be necessary to run a drain across a railroad it shall be the duty of such railroad company, when notified by the board of drain commissioners to do so, to *make* the necessary opening through said road, and to build and keep in repair suitable culverts or bridges."

Paragraph 3 of § 7575, Rev. Codes 1905, seems clearly to provide that the right of eminent domain can be used for draining any county, incorporated city, village, or town, raising the banks of streams, and removing the obstructions therefrom, and widening, deepening, or draining their channels.

It may be conceded that the drainage board had the right, as agents of the parties interested and perhaps of the state as a whole, to require the removal of any material and artificial obstructions to the flowage of the water in the stream. It may also be conceded that the upper riparian owners would have had the right, in case of an obstruction which was injurious to them, or in case of the failure of the railway company to remove the same, to themselves enter upon the land of such company, and to remove it at its expense. Beyond this, however, the law does not seem to go.

The order of the district court, therefore, which required the removal of the entire bridge, went altogether too far. After considering the petition on rehearing, we are constrained to withdraw what we said in the principal opinion as to the obstruction offered by the piles of the bridge to the flow of the river, as the trial court found the issue against the defendant and appellant, and we must be governed by this finding, as there was at least some creditable evidence in support thereof. All, however, that the court should have ordered, and could have legally ordered, was the removal of these artificial obstructions to the flowage of the water. It had no right to order the removal of "the 100 feet of its *trestle and bridge,* and the piles and timbers supporting the same at the point thereof, *where said removal is necessary and required to permit the passing down the Mouse river of the dredge and boats of the France Dredging & Construction Company.*" We are by no means sure that in the case at bar the removal of the piles constituting the obstruction to the flowage would not necessarily involve the removal of the superstructure also, and that there could be

no other means adopted to support that superstructure during the necessary changes, but this, however, is a matter of detail which we cannot well here determine. All that the record shows, indeed, is that the superstructure is now supported by these piles, and it is silent upon what procedure would be necessary or possible in the case of the making of the improvements, and whether temporary supports could be furnished or not. The important thing, anyway, is the rule of law, and that we have endeavored to announce.

The judgment of the District Court is reversed, and the cause remanded, with directions to enter a judgment and to modify its writ in conformity with the conclusions of this supplemental opinion.