Filed January 21, 1896.

No. 17,834.

THE LAKE ERIE AND WESTERN RAILROAD CO. v. CLUGGISH ET AL.

ESTOPPEL.— Railroad.—Remonstrance.— Drainage Assessment.— A railroad company whose assessments for benefits from the construction of a drain are reduced in view of its remonstrance that it should be allowed for the cost and expenses of making a proper passage way under its track, is estopped to assert that the cost of disturbing its bridge over the drain was not a proper ground of remonstrance.

EVIDENCE.—Drainage.—Character of Country and Earth Through Which the Drain Passes.—Injunction.—Railroad.—In a suit to enjoin a railroad company from interferring with the alteration of its bridge to allow the passage of a dredge along the stream in the construction of a ditch improvement, evidence of the character of the country, and the earth through which the drain was to be made is admissible to show that the method of making it by use of a dredging machine is the proper and efficient method.

INJUNCTION.—When Bond Not Required.—A bond is not required under the statute, in case of an injunction in the final decree, but

only where the injunction or restraining order precedes the final decree or judgment.

DAMAGES.—*Drainage Assessment.—Deducting Damages Caused by Temporary Change in Railroad Bridge.*—The cost of temporary changes in a railroad bridge to allow the construction of a ditch improvement, is properly considered in determining the reduction from the assessment of the company to be made for damages for such cost, if when made not in the interest of the improvement, but that of the traveling public, it is a proper charge by the company and does not arise from its continuing duty to so maintain its bridges as to admit public rights subsequently accruing.

From the Henry Circuit Court.

*W. E. Hackedorn, J. B. Cockrum, J. Brown* and *W. Brown*, for appellant.

*M. E. Forkner*, for appellees.

HACKNEY, C. J.—This was a suit by the appellees, Robert Cluggish, as commissioner of drainage, and Frederick J. Smith, contractor for the construction of an extensive drain, including the dredging of Buck creek, in Henry and Delaware counties, to enjoin the appellant from interfering with and preventing the appellees in the prosecution of said work, from taking from the bed of said stream, within the line of said work, a bent supporting, in part, a wooden bridge of the appellant spanning said stream, and in so far breaking the span of said bridge as to permit the dredge, employed in said work, to pass along said stream and cut through the channel at the point therein crossed by said bridge. The petition alleged all of the facts essential to the jurisdiction of the circuit court over the subject-matter and the parties, including the appellant, in ordering the construction of said drain, and that, upon the report of the commissioners of drainage, fixing the benefits of the appellant at $225.00, the appellant filed a remonstrance, among other grounds alleging that

in assessing benefits and injuries or damages had and suffered by it, no allowance was made for damage to it of the cost and expenses to which it would be put by reason of making a proper passage way under said track for said improvement, which, it was alleged therein, would amount to more than one hundred and twenty-five dollars. It was further alleged in the complaint that upon the final hearing of the issue tendered by said remonstrance the court found and adjudged that the benefits so assessed against the appellant be reduced $125.00, upon the agreement of the parties. There were also allegations as to the necessity for the removal of said bent that the dredging might be done where it stood; that the dredge, necessarily employed in said work, could not pass under said bridge, and that the appellant declined to make the removal of said bent or said bridge and kept guard against the removal thereof by the appellees.

Issue was made upon the complaint, and was tried by the court, resulting in a decree enjoining the appellant from obstructing said work, delaying the prosecution thereof or the crossing of the right of way of the appellant with the dredging machine used in said work. The errors assigned call in question the rulings of the trial court (1) in overruling a demurrer to the complaint, (2) in overruling the appellants' motion for a new trial, and (3) in overruling the appellants' motion to dissolve the injunction.

The right is asserted by the appellant, and conceded by the appellees, that the railway company, in the first instance, should be permitted to make such temporary or permanent changes in its bridge as may be necessary in the proper prosecution of the work in question. For the company it is insisted that the cost of any such change is not properly within the statutory causes for

remonstrance against any such work, and could not, therefore, have been adjudicated in the proceedings by which the drainage was established; and further, that, not having been adjudicated, and the contractor, being obliged by his contract to construct the drain, including the temporary disturbance of bridges, at his own expense, was required to pay the railroad company its proper costs and charges for the necessary removal and replacement of such bridges. On behalf of the appellee it is insisted that, under the statute, 2 R. S. 1894, section 5153, subd. 5, the company's right to maintain the bridge across the stream was burdened with the duty of so constructing its bridge as not to impair the free use of the stream; that such duty is a continuing one, and requires the company to so care for its bridge as to permit the public to go forward with the drain without incurring the cost of so caring for the bridge; and it is further insisted that the cost of such care to the railway company is not only within the statutory causes for remonstrance, but that the same was made and determined as an issue in the drainage proceedings, thereby precluding the appellant.

In the recent case of *Lake Erie, etc., R. W. Co.* v. *Smith*, 61 Fed. Rep. 885, involving the same parties and the same controversy that we have here, Judge Baker held that the adjudication of the circuit court upon the question of damages to the appellant was conclusive against collateral attack. It was there further said: "The duty of a railroad to restore a stream or highway which is crossed by the line of its road is a continuing duty; and if, by the increase of population or other causes, the crossing becomes inadequate to meet the new and altered conditions of the country, it is the duty of the railroad to make such alterations as will meet the present needs of the public. *Cooke* v. *Rail-*

road Co., 133 Mass. 185. Under a fair construction of section 3903, R. S. 1881, it is the duty of a railroad company to construct its road when it intersects any highway or stream in such manner as to afford security for life and property; and this is so whether the way is laid out and opened before or after the construction of the railroad. *Railway Co.* v. *Smith*, 91 Ind. 119; *National Water Works Co.* v. *City of Kansas*, 28 Fed. Rep. 921."

Whether this continuing duty involves the requirement that the company shall, at its own expense, so alter its bridges as to meet the advancing needs of the public, or whether the requirement is for the protection of the public against exclusive occupancy by railways against new public uses, we do not regard as necessary to decide, since it is our conclusion that this expense was allowed to the appellant in the proceedings for the establishment of the drain. By the drainage act, R. S. 1894, section 5625, and by the fifth and seventh specified causes of remonstrance therein, it is provided that objection may be made that the land assessed as benefited "will not be affected, nor benefited to the extent of the assessment," and that the lands "will be damaged by the construction of the proposed work." It is, by said section, further provided that, upon the hearing, the court may, as justice requires, diminish the assessments by giving damages. As we have seen, the complaint alleged that the appellant's remonstrance asked a reduction of the assessed benefits upon the ground that in the assessment no allowance had been made for the damage it would sustain from the cost and expenses of making a proper passage way under said track for said improvement, which it was alleged would amount to more than $125.00.

Thus, it is seen, the company sought an allowance,

and, by agreement of the parties as alleged, obtained it, for the cost and expenses of making a proper passage-way under said track for said improvement. The assumption of counsel that benefits and damages may not at one time exist, with reference to the company's property, is, we think, entirely erroneous. It may be benefited by the drainage afforded for its right of way, and it may be damaged by a requirement to construct two bents, one on either side of the channel, instead of the one now standing diagonally across the channel, or by the temporary removal of its bridge to permit the proper construction of the drain. Beyond these elements of damage there are none which occur to us excepting that which may be incidental merely to the elements stated. The net result, as found by the court upon the agreement of the parties, was $100.00 in benefits. The $125.00, which, by the remonstrance, the agreement and the action of the court, diminished the appellant's benefits came from damages, and now stands irrevocably to the credit of the appellant. If it were true, as appellant insists, that the cost of disturbing the bridge was not a proper ground of remonstrance, a court of equity could not accept that insistence from the appellant, who at the same time retains all of the advantages gained by it through such remonstrance. However, it is our opinion, upon the drainage statute, that if the cost of temporary changes in the bridge, to be made by the appellant, not in the interest of the new public improvement, but in the interest of the traveling public, are proper charges by the company, and do not arise from its continuing duty to so maintain its bridges as to admit public rights accruing subsequent to the construction of the bridge, and which may co-exist with the use by the company of the crossing, such charges were proper subjects for consideration in the ditch pro-

ceedings. The temporary disturbance of the bridge was unlike the question presented in *Rigney, Tr.,* v. *Fischer,* 113 Ind. 313, where a new and permanent independent public improvement, namely, a highway bridge, became necessary for public travel across the ditch. Here the disturbance of the bridge becomes necessary as a part of the work in hand, just as the removal of a tree might be necessary, but the interest of the traveling public and the better ability of the railway company to make such disturbance with the least detriment to all interests, suggests that instead of adding the cost thereof to the sum paid for excavating, it be deducted from the company's benefits. Presuming that the total benefits assessed will equal the costs of construction and the damages sustained, exact justice is done by allowing the credit against the appellants' benefits instead of adding the cost of the removal to the contract price and increasing the assessments of benefits to meet it. Upon either theory that the appellant owed the cost of disturbing its bridge to the continuing duty resting upon it to the public, or that it was a proper element of damage to be considered in the ditch proceedings, we hold the complaint sufficient; for, upon either theory, the appellant could not decline to perform the duty itself and deny the opportunity to the new improvement. Nor has the appellant cause for complaint that the court admitted evidence of the character of the country, and the earth through which the drain was to be made, for the purpose of determining that the method of making it, namely, by the use of a dredging machine, was the proper and efficient method. The drainage proceeding may not have stipulated the particular method, but it contemplated the proper method, and to this method the appellant cannot object because not

expressly notified of it by the petition for the improvement. If the opening of the bridge to permit the passage of the dredge-boat is an incident to the proper method, the company was required to know it, just as the contractor was required to know that if his dredge-boat was constructed unnecessarily large and out of proportion to the work to be done, he could not thereby increase the obligations of the railway company. However, it was expressly agreed, as a part of the trial below, that the boat was an "ordinary dredging machine."

We think it clear that no error was committed in the introduction of the evidence complained of.

Finally it is insisted that the motion to dissolve the injunction should have been sustained. The alleged ground of the motion was that no bond or undertaking had been filed in the cause by the appellee. No preliminary restraining order nor interlocutory injunction was sought or granted, the final order alone being prayed. Is a bond essential in such case? Appellant's learned counsel insist that under sections 1167, 1168, R. S. 1894; 1153, 1154, R. S. 1881, it is indispensable. These sections should be read in connection with sections 1161, 1162, 1163, 1164, 1165, 1166, 1169, 1171, *et seq.*, R. S. 1894, being all of the statutory provisions as to the procedure in injunction proceedings in this State.

It will be seen, from such reading, that the power of the courts to grant what is generally known as "perpetual injunctions," or the final adjudication which stays the acts threatened, is not derived from the statute. Those orders and writs which are authorized by the statute are such as, by section 1161, *supra*, may be granted in vacation as in term time. Such final adjudications are self-executing, unless their violation

constitutes a contempt which permits punishment, and they require the service of no writ nor copy of the order as provided by sections 1169, 1172, *supra*, but the power to render such adjudications arises from the inherent equitable jurisdiction of the courts rather than from their legal or statutory powers.

Section 1161, *supra*, permits "restraining orders and injunctions" in vacation. The instances in which such orders and when "temporary injunctions" may be granted are given in section 1162, *supra*, as when some act is threatened which tends "to render the judgment ineffectual;" or when the relief sought "consists of restraining proceedings upon a final order or judgment, an injunction may be granted to restrain such act or proceedings," not finally, but "until the further order of the court," etc. The injunction and restraining order, contemplated by the statute, are granted, as provided by sections 1163, 1164, *supra*, at the time the action is commenced "or at any time afterward *before judgment in that proceeding.*" By section 1167, *supra*, it is provided that "No injunction or restraining order shall be granted until the party asking it shall enter into a written undertaking," etc., and by section 1168, *supra*, it is provided that: "When an injunction is granted upon the hearing, after a temporary restraining order, the plaintiff shall not be required to enter into a second written undertaking, unless the former shall be deemed insufficient, but the plaintiff and his surety shall remain liable upon the original undertaking."

The "hearing after a temporary restraining order" is that hearing which follows the giving of notice as required by section 1164, *supra*, and the "injunction * granted" is that which follows the "restraining order" granted without notice as provided by said section 1164,

Goldthait *v.* The Cincinnati, Wabash and Michigan R. W. Co.

*supra.* We think it manifest from all of these provisions that a bond is contemplated only in cases where the injunction or restraining order precedes the final decree or judgment, and that no bond is required in suits like the present. This construction of the statute has, in effect, been held in *Denny, Admr.,* v. *Moore,* 13 Ind. 418; *Sand Creek Turnp. Co.* v. *Robbins,* 41 Ind. 79; *Board, etc.,* v. *Markle,* 46 Ind. 96; *Rich* v. *Dessar,* 50 Ind. 309; *Champ* v. *Kendrick,* 130 Ind. 549. In each of these cases it was held notwithstanding the provision of section 1163, *supra,* that "In all applications for injunction the complaint * * * shall be verified," it was not necessary to verify a complaint seeking only the final decree of injunction, and where no interlocutory restraining order or injunction had been granted. In *Denny* v. *Moore, supra,* it was objected, also, that no bond was filed, and the court suggested that probably none was necessary where the injunction prayed was on the final determination of the cause.

We find no available error in the record.

Judgment is affirmed.

Filed January 21, 1896.