TEXAS EASTERN TRANSMISSION CORP. *v.* CITY OF INDIANAPOLIS.

[No. 769S171. Filed October 7, 1970. Rehearing denied November 25, 1970.]

*Patrick J. Smith, James R. McClarnon* and *Smith, Morgan & Ryan,* of counsel, all of Indianapolis for appellant.

*Harold H. Kohlmeyer, Jr.,* Corporation Counsel, *Jerry Newman,* Assistant City Attorney, *Larry J. Wallace,* of Indianapolis, for appellee.

ARTERBURN, J.—The appellant, Texas Eastern Transmission Corporation, has appealed from a decision of the Board of Flood Control Commissioners of the City of Indianapolis. The appeal challenges the taking of certain alleged interests in an easement for a pipeline operated by Texas Eastern Transmission Corporation as a result of the Board of Flood Control Commissioners awarding no damages for such alleged taking or alleged interference with the exercise of its easement.

The factual background reveals that in July, 1957, Texas Eastern Transmission Corporation commenced preliminary studies looking towards the construction of a branch petroleum products pipeline which would run through Eagle Creek Valley Watershed in western Marion County. Also in 1957, the Board of Flood Control Commissioners of the City of Indianapolis commenced preliminary studies for flood prevention and control of the Eagle Creek Valley Watershed, which were completed on May 22, 1961, and filed in the office of the Indianapolis Flood Control District. On October 5, 1961, the appellant pipeline company requested a permit from the Indianapolis Flood Control District for construction of a pipeline across Eagle Creek in three locations. On October 13, 1961 the appellant's request was approved, subject to certain conditions and provisions, namely, that the pipeline company would pay for any damages resulting from any installation; that since the installed pipelines would be below the pool level of the Eagle Creek Reservoir, the appellant would be required to make every effort possible against leaks, and that appellant would be fully liable for damages resulting therefrom.

On November 29, 1961, the Indiana Flood Control Commission denied the application of the appellant to cross Eagle Creek until appellant resubmitted plans showing the pipeline in the entire flood plain of the proposed Eagle Creek Reservoir would be weighted or the appellant stipulated that it would pay for all repairs and adjustments made necessary by the reservoir. From November 1, 1961, to December 13, 1961, appellant proceeded to construct and did complete such a pipeline and put it into service, without complying with the requirements of the Indianapolis Flood Control District or the Indiana Flood Control Commission with reference to weighting the pipelines and taking precautions against leakage, as recommended, nor stipulating they would pay for all repairs and adjustments necessary in such event. Accordingly, on September 7, 1962, the Indianapolis Flood Control District revoked its heretofore conditionally granted permit of October 13,

1961. On October 19, 1965, after the construction of the dam and the reservoir, the appellee held a hearing on the primary damage roll. On August 25, 1965, this was confirmed, finding that appellant pipeline company was entitled to no damages.

Appellant argues that its easement has been impaired or taken, for which it has received no compensation, as required by law, as a result of the flooding of the reservoir by the city. Part of appellant's pipeline will be covered by water continuously and other parts intermittenly, resulting in added costs to the appellant in the maintenance of such lines and in the addition of multiple lines.

We first consider the anomalous position of the appellant, who is here asking for damages for construction work which, according to the record, has not yet been fully approved, nor have permits been granted for its maintenance and operation. The appellant constructed a pipeline that crosses Eagle Creek, a waterway, which is regulated and controlled by the appellee and the Indiana Flood Control Commission pursuant to the state law. Burns' Indiana Stat. Anno. §§ 48-4730, 27-1102, 27-1103.

The powers of both the Board of Flood Control Commissioners of the City of Indianapolis and the Indiana Flood Control Commission appear to us to be broad and quite comprehensive in the interest of the health and safety of the people of Indiana, and its operation and jurisdiction are supported by the police power of the State. 1 Nichols on Eminent Domain § 1.42[7].

Burns' Indiana Stat. Anno. § 48-4730 provides, in part, that the board of flood control commissioners of any such city of the first class shall have power:

"To regulate and require and prescribe the manner in which any and all sewers, drains, conduits, viaducts, aqueducts, cables, power lines and pipe lines of any description crossing the bed of any stream, river, or watercourse, or along the banks thereof, or carried across, over or under the same on any bridge, trestle, support or other structure, shall be located or relocated, replaced, altered, repaired,

constructed or reconstructed, lengthened, widened, or removed, whether already constructed or proposed to be constructed or reconstructed by any public authorities or by any private persons or corporations."

In *Singer et al.* v. *Washington Light & Power Co.* (1925), 83 Ind. App. 720, 723, 149 N. E. 918, 919, the Appellate Court of Indiana made the following pertinent comment:

"Corporations, such as water and gas companies, which receive franchises to lay pipes in streets, take the granted privileges, subject in so far as the location is concerned, to such future regulations as may be required in the interest of the public welfare. *New Orleans Gas Co.* v. *Drainage Comm.* (1905), 197 U. S. 453, 25 S. Ct. 471, 49 L. Ed. 831. As was said by the Supreme Court of Florida, in *Anderson* v. *Fuller* (1906), 51 Fla. 380, 41 So. 684, 6 L. R. A. (N. S.) 1026, 120 Am. St. Rep. 170:

'A water company, placing its pipes in the streets under a franchise contract with the city, does so in subordination to the superior rights of the public, through its duly constituted municipal authorities, to construct sewers in the same streets, whenever and wherever the public interest demands; and if, in consequence of the exercise of this right, the water company is compelled to relay its pipes, in the absence of unreasonable or malicious conduct, it has no cause of action against the corporation for reimbursement on account thereof.' "

Similarly the Indiana Supreme Court has held a railroad company cannot recover compensation for damage to their bridge necessitated by a public improvement of a drainage system. *The Lake Erie and Western R. R. Co.* v. *Cluggish, et al.* (1896), 143 Ind. 347, 42 N. E. 743.

It seems to us the vital concern here is the right of a governmental authority to exercise the police power to prevent persons from conducting themselves or erecting property in a manner which is likely to be detrimental to the public health and general welfare. The Flood Control Commissioners in this case, as a condition precedent to the laying of this pipeline, insisted that all reasonable measures

be taken to prevent leakage in the public reservoir. It undoubtedly had the right under its police power to insist upon such standards of construction.

The appellant in this case has preceeded to build the pipeline without first conforming to such regulatory conditions as were imposed for the good of the general public. It now asks damages to comply with such conditions. We feel the judgment of the trial court in this case was correct. The alleged damages asked are a part of the original costs of construction, at least in so far as the weighting and prevention against leakage are concerned.

Finally, complaint is made that a witness was not permitted to testify as to cost of additional insurance for damages by reason of the conditions laid down by the Flood Control Commission. We see no substantial merit in this contention, since the witness offered to state what the cost of the additional insurance would be, but, in his own words, could not explain how he arrived at the figure named as a premium nor how the insurance people evaluated the risk for which they charged such a premium.

The judgment of the trial court is affirmed.

Hunter, C.J., Givan and DeBruler, JJ., concur. Jackson, J., dissents without opinion.

NOTE.—Reported in 262 N. E. 2d 512.