GERALD EUGENE MCDONALD AND JOHN BROWN CHRISTIAN *v.* STATE OF INDIANA.

[No. 575S134. Filed August 18, 1976.]

*Bruce M. Frey*, of Warsaw, for appellants.

*Theodore L. Sendak*, Attorney General, *Wesley T. Wilson*, Deputy Attorney General, for appellee.

DEBRULER, J.—In a trial by jury, appellants were convicted of committing a robbery while armed under Ind. Code § 35-12-1-1 and received sentences of twenty years imprisonment. On appeal, they raise the contentions that (1) the evidence identifying them as the perpetrators of the offense was insufficient to support the verdict, and (2) that the trial court erred in overruling an objection to the testimony of an expert witness.

The evidence presented showed that, around 8:00 p.m., November 29, 1974, two bandits wearing ski masks and blue nylon jackets forced their way into the home of Milo Sprunger, sprayed Mr. Sprunger with mace, beat him about the head, and threatened him with a bayonet which one of them held in his hand. They tied him up and took a pocket watch, some Canadian coins, three one-dollar bills, two rifles and a shotgun. While this assault was taking place, the sheriff received a telephone call from one Zentz, who reported that McDonald

and Christian, appellants herein, were committing a robbery on the road on which Mr. Sprunger lived.

Appellants were arrested around 10:00 p.m. of the same day in a car in which their wives and children were also riding. A knife which Sprunger had described was found in the car. Appellant McDonald had three folded one-dollar bills and nearly ten dollars in Canadian dimes and quarters in his front pants pocket. He also had a billfold on his person containing $29.00 and $2.42 in miscellaneous change. Both appellants were wearing slick finish dark blue jackets at the time.

Milo Sprunger, the victim, testified that one of the bandits spoke during the assault and that he recognized the voice as that of appellant Christian. He was casually acquainted with Christian and Christian's father.

A complete description of the offense came in the trial testimony of Zentz. He had participated in conversations with appellants in which they announced their plan to rob Sprunger as they had heard that he did not keep his money in a bank. Zentz got them a can of mace and drove them to the road on which Sprunger lived. McDonald and Christian got out, put on ski masks, took Zentz's can of mace, and told him to come back in five to fifteen minutes. Zentz then drove to a nearby grocery and called the sheriff, informing him that the robbery was taking place. He then drove back to the place where he had let appellants out. They came down the road carrying guns, still wearing their ski masks, and got in the car.

In the examination of the accomplice Zentz, it was brought out that, at the time the robbery was planned and executed, and at the time of Zentz's testimony, there was a felony charge against him pending in the same county. In regard thereto, he testified that enforcement officials had made no indication that he would benefit in that case if he testified. Appellants complain that their convictions rest upon the testimony of an admitted accomplice who was obviously under pressure from law enforcement

officials to testify against them. He admitted that he had prior felony convictions and that the pending felony charge against him had not been disposed of at the time he testified. Appellants contend that under these circumstances his testimony falls short of proof sufficient to sustain a conviction.

In this regard appellants rely upon *Gaddis* v. *State*, (1969) 253 Ind. 73, 251 N.E.2d 658. In that case the sole evidence identifying the accused was that of the victim, who, when first viewing the accused under arrest, was unsure that the accused had assaulted him. Thereafter, the police threatened the victim with penitentiary time if he did not identify the accused. Then, the victim was sure of the identification. The Court noted that such evidence was "vacillating, contradictory and uncertain." The Court also noted "a *complete lack* of circumstantial evidence by which appellant could be connected with the crime." 253 Ind. at 79; 251 N.E.2d at 661. (Emphasis in original).

In the present case, it is true that Zentz was testifying under a type of pressure from law enforcement officials because of the pending prosecution. However, unlike the situation in *Gaddis*, Zentz did not vacillate or contradict himself while testifying, and his testimony was corroborated by an abundance of circumstantial evidence, which also served to identify appellants as the bandits. Viewing the evidence tending to support the verdict as a whole, it is sufficient to support the jury's determination that appellants committed this offense.

Appellants next contend that they are entitled to a new trial by reason of reversible error occurring when the trial court permitted a laboratory technician, Conley, to testify that two ski masks found near the scene of the robbery contained human hairs. Conley testified as follows:

"A. I've seen these before. Yes.
Q. And what did you do with them, if anything?
A. I examined the two stocking caps enclosed in the plastic bags for the presence of human hair to be used for comparative purposes.

Q. First of all, did you find any human hairs in these Exhibits # 13 and # 14?

MR. FREY: Objection, at this point, Your Honor. May I ask a few preliminary questions on the subject of hair?

JUDGE RASOR: Well, I suppose. I don't know what you had in mind.

MR. FREY: Well, let me just phrase my objection and we can go from there. At this point there has been no foundation laid as to the tests or the basis for the expert witness's conclusion that he has human hair there. That is the basis of my present objection. I would require some foundation be laid that he knows human hair when he sees it.

JUDGE RASOR: You have had some foundation toward that. We'll overrule your objection as it now stands.

Q. Did you find any human hair in State's Exhibits # 13 and # 14?

A. Yes. Hairs were found in each stocking cap."

Appellants contend that the objection should have been sustained because of the absence of prior statements by the witness of the facts upon which opinion was based. Appellants rely upon *Texas Eastern Transmission Corp.* v. *City of Indianapolis,* (1970) 255 Ind. 43, 262 N.E.2d 512. There, an expert witness testifying on the issue of damages flowing from an alleged taking of property by a governmental agency offered to testify as to the increased cost of insurance resulting from the alleged damage. The trial court would not let the witness testify to such additional costs, and this Court agreed with that ruling because:

"the witness offered to state what the cost of the additional insurance would be, but, in his own words, could not explain how he arrived at the figure named as a premium nor how the insurance people evaluated the risk for which they charged such a premium." 255 Ind. at 47, 262 N.E.2d at 515.

In other words, the expert had no facts or data upon which to base his opinion of the cost of additional insurance. This holding is consonant with the holding of the Court of Appeals in *Guyton* v. *State,* (1973) 157 Ind. App. 59, 299 N.E.2d 233, in which that Court stated:

"In effect, two types of foundation must be laid in order to introduce expert testimony. The professional qualifications of the witness must, of course, be established. However, the court must also be satisfied that the witness observed facts sufficient to validly form an opinion." 299 N.E.2d at 236.

Here, the witness Conley held a Bachelor of Science degree in zoology, with a minor in chemistry. He had attended courses in microscopy of hair and fibers at Macrone Research Institute and at Georgetown University. We agree with the trial court that this background sufficed to establish the professional qualifications of the witness to express an opinion on the subject of hair and fibers. However, there is nothing at all in the prior testimony of Conley which would satisfy the second part of the foundation requirement, namely, whether the witness had personally examined the fibers found in the masks for the purpose of determining their type and composition. Therefore, there was no proper foundation made by the prosecution at the time this witness was permitted to state his conclusions that the fibers found in the hat were human hairs. However, within moments after this opinion was presented to the jury, the prosecution brought out, under examination of this same witness, a detailed description of the tests and examination which the witness had conducted which underlay his opinion that they were human hairs. Therefore the purpose of the two-fold foundation was fulfilled, albeit tardily, and the court's ruling was not reversible error. We do not go so far here as to hold that a complete and detailed description of scientific tests forming the basis of the witness' opinion must be included in a proper foundation. Under circumstances such as these, it is only necessary that the type of test be identified and generally described and that the person doing the testing also be identified. It is within the discretion of the trial court to require more than this should circumstances so warrant.

The judgment of the trial court is affirmed.

Givan, C.J., Arterburn, Hunter and Prentice, JJ., concur.

NOTE.—Reported at 352 N.E.2d 708.