Richard RALSTON,
Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 1–580A107.

Court of Appeals of Indiana,
First District.

Oct. 29, 1980.

Rehearing Denied Dec. 3, 1980.

Don R. Darnell, Newport, for defendant–appellant.

Theodore L. Sendak, Atty. Gen., Stephen J. Cuthbert, Deputy Atty. Gen., Indianapolis, for plaintiff–appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Defendant–appellant brings this appeal from his convictions by jury trial and sentencing by the Vermillion Circuit Court for forgery and attempted possession of a controlled substance.

We affirm.

## STATEMENT OF THE FACTS

The evidence most favorable to the State and reasonable inferences drawn from that evidence indicate that on March 27, 1979, Richard Ralston had an appointment with Dr. Richard S. Mayrose, a Terre Haute physician. Cathy Burns, Annette Pine, and Mark Slaughter accompanied Ralston to the doctor's office and waited for Ralston to return. When Ralston left the doctor's office he had two prescriptions and a blank piece of paper. The group drove away in Burns' car and then made a stop to let Pine inquire about employment. While the other three were waiting in the car, Burns observed Ralston write out a prescription and sign Richard Mayrose's name on a prescription form. Then they drove to Gillis' Pharmacy in Clinton. Ralston gave Burns a $100 bill and directed her to give the prescription he had written to the pharmacist. The plan was for Ralston to keep 40 of the Preludin tablets and to give 20 to Burns. The pharmacist refused to fill the prescription, so the four drove to Powell's Pharmacy in Clinton, where Burns once again presented the prescription. James Michael, the pharmacist and proprietor, noticed certain irregularities in the prescription, including the appearance of Dr. Mayrose's signature. Michael called Dr. Mayrose to verify the prescription and called the Clinton City Police to report the incident. Burns was arrested then and Ralston and Slaughter were arrested several days later.

Ralston was charged by information on April 2, 1979, with forgery and attempted possession of a controlled substance. Paragraph I of the information stated, in pertinent part:

"STATE OF INDIANA

vs.

Richard Ralston )
Mark Slaughter ) Paragraph I
Terre Haute, IN ) Forgery

Cause No. CR 79–16

"Michael Guinn, Clinton City Police being duly sworn upon his oath, says that: Richard Ralston, and Mark Slaughter late of the said County, on or about the 27 day of March A.D., 1979 at the County and State aforesaid, did with intent to defraud Powell's Pharmacy Jim Michaels owner, utter a written instrument, to-wit:

[Copy of prescription form omitted.]

in such a manner that it proports [sic] to have been made by another person to-wit: Dr. Richard Mayrose.

"All of which is contrary to the form of the statute in such cases made and provided, to–wit: Ind. Code 35–43–5–2, and against the peace and dignity of the State of Indiana."

Paragraph II of the information provided, in substance, as follows:

"STATE OF INDIANA

vs.

Richard Ralston ) Paragraph II
Mark Slaughter ) Attempted Possession
of a Controlled
Substance

Cause No. CR 79–16

"Mike Guinn Clinton City Police being duly sworn upon his oath, says that: Richard Ralston and Mark Slaughter late of the said County, on or about the 27 day of March A.D., 1979 at the County and State aforesaid, did attempt to commit the crime of possession of a controlled substance by knowingly presenting a forged prescription to be filled for Preludin at Powell's Pharmacy which conduct constituted a substantial step toward the commission of said crime of possession of a controlled substance.

"All of which is contrary to the form of statute in such cases made and provided, to–wit: Ind. Code 35–41–5–1, and against the peace and dignity of the State of Indiana."

The jury found Ralston guilty of both charges, and the Vermillion Circuit Court sentenced him to the Indiana Department of Corrections for five years on the forgery conviction and two years for attempted possession of a controlled substance. The terms are to be served consecutively.

## STATEMENT OF THE ISSUES

Ralston presents the following issues for our review:

"1. Whether the defendant may be sentenced to two (2) consecutive terms of imprisonment when found guilty of committing two (2) criminal offenses neither of which require proof of different or additional facts, which the other does not.

"2. Whether the trial court may overrule the defendant's motion to correct errors notwithstanding the State of Indiana's failure to respond or object to the defendant's motion to correct errors.

"3. Whether the court erred in sustaining the State of Indiana's motion in limine; ordering that the defendant and/or his attorney shall not mention before the jury at any stage of the trial the possible penalties of the crime which the defendant was alleged to have committed.

"4. Whether the court erred in allowing the State of Indiana's witness, Mike Guinn, to give his account or opinion as to whether a previous witness of the State of Indiana's testimony during the trial was consistent with previous out–of–court statements of the witness.

"5. Whether the court erred in reading to the jury the court's preliminary instruction defining the offense of Possession of a Controlled Substance, Schedule I, II, III, IV, or V except Marijuana or Hashish; notwithstanding that the defendant was not charged with the commission of said offense.

"6. Whether the court erred in overruling the defendant's motion to dismiss Paragraph II, the crime of Attempted Possession of a Controlled Substance; because of the failure of the State of Indi-

ana to properly allege the essential element of 'controlled substance' classified in Schedule I, II, III, IV or V, except Marijuana or Hashish; and failure to cite the statutory provisions alleged to have been violated by the defendant.

"7. Whether the court erred in overruling the defendant's objection to the State of Indiana's witness, Jim Michaels' testimony as to whether Preludin contains any ingredients which are a controlled substance.

"8. Whether the court erred in overruling the defendant's motion in limine; requesting the court to order the State of Indiana to refrain from attempts to introduce into evidence criminal conduct of the defendant with respect to any crimes other than the ones which he was currently on trial for.

"9. Whether the court erred in overruling the defendant's motion for directed verdict at the close of the State of Indiana's case with respect to Paragraph I, Forgery, and the defendant's motion for a directed verdict at the close of all the evidence, because the State of Indiana failed to produce any evidence that the defendant did in fact utter a written prescription and/or intended to defraud anyone.

"10. Whether the court erred in overruling the defendant's motion for directed verdict of Paragraph II, Attempted Possession of a Controlled Substance, and a directed verdict at the close of all the evidence, because the State of Indiana failed to present any evidence that the defendant did knowingly present a forged prescription to Powell's Pharmacy.

"11. Whether the court erred in allowing the State of Indiana's witnesses, Cathy Burns, Mark Slaughter and Annette Pine to provide testimony of the defendant's involvement in other crimes other than those with which he was charged.

"12. Whether the court erred in reading the State of Indiana's instructions numbered 1, 2, 3, 5 and 6, which erroneously instructed the jury as to the law with respect to the issues involved in this crime.

"13. Whether the court erred in failure to give the defendant's instructions numbered 1 and 4."

## DECISION

*Issue One*

■ Ralston maintains that the same act gave rise to both crimes alleged. He asserts that the proof required for each element of both offenses is the same. Consequently, he says, the two offenses are really one offense and under the double jeopardy clause of the fifth amendment to the United States Constitution he may not be sentenced for both offenses. Ralston further claims that the allegations in both paragraphs of the information are, in essence, that he attempted to present a forged prescription for Preludin to be filled at Powell's Pharmacy. In this regard, he contends that attempted possession of a controlled substance is a lesser included offense of forgery.

The double jeopardy clause of the fifth amendment was made applicable to the states through the due process clause of the fourteenth amendment in *Benton v. Maryland*, (1969) 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707. Years ago the United States Supreme Court established the test for determining whether two offenses are the same for double jeopardy purposes in *Blockburger v. United States*, (1932) 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306:

"The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. *Gavieres v. United States*, 220 U.S. 338, 342 [31 S.Ct. 421, 422, 55 L.Ed. 489] and authorities cited."

*Accord, Brown v. Ohio*, (1977) 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187; *Elmore v. State*, (1978) Ind., 382 N.E.2d 893.

Here it appears that the same act or transaction is the basis for both charges.

Consequently, we must go to the next step to determine whether the offenses charged are the same. *Elmore, supra.*

Forgery is defined in Ind. Code 35–43–5–2 (Supp. 1980) as follows:

"35–43–5–2 FORGERY

"Sec. 2. A person who, with intent to defraud, makes or utters a written instrument in such a manner that it purports to have been made:

(1) by another person;

(2) at another time;

(3) with different provisions; or

(4) by authority of one who did not give authority;

commits forgery, a Class C felony."

Paragraph I of the information charged that Ralston uttered a written instrument. Thus, it was the *uttering* variety, rather than the *making* variety, of forgery with which Ralston was charged. According to Ind. Code 35–41–1–2 (Supp.1980), " 'Utter' means to issue, authenticate, transfer, publish, deliver, sell, transmit, present, or use."

An attempt is defined in the following manner in Ind. Code 35–41–5–1 (Supp. 1980):

"35–41–5–1 ATTEMPT

"Sec. 1. (a) A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime. An attempt to commit a crime is a felony or misdemeanor of the same class as the crime attempted. However, an attempt to commit murder is a Class A felony.

"(b) It is no defense that, because of a misapprehension of the circumstances, it would have been impossible for the accused person to commit the crime attempted."

Possession of a controlled substance is defined by Ind. Code 35–48–4–7 (Supp. 1980):

"35–48–4–7 POSSESSION OF A CONTROLLED SUBSTANCE

"Sec. 7. A person who, without a valid prescription or order of a practitioner acting in the course of his professional practice, knowingly or intentionally possesses a controlled substance classified in schedule I, II, III, IV, or V, except marijuana or hashish, commits possession of a controlled substance, a Class D Felony."

It is readily apparent that a forgery conviction requires proof of a fact or element which attempted possession of a controlled substance does not, that is, intent to defraud. Furthermore, forgery does not require that the object of the proscribed behavior be the possession of a controlled substance. Consequently, forgery and attempted possession of a controlled substance are not the same offense under the double jeopardy clause.[1] The trial court did not err in sentencing Ralston consecutively for the two offenses.

*Issue Two*

■ Ralston points out that his motion to correct errors was filed on November 1, 1979, and was overruled on February 8, 1980. The State never filed a response to his motion. He asserts that Ind. Rules of Procedure, Trial Rule 8(D), which is made applicable to criminal prosecutions by Ind. Rules of Procedure, Criminal Rule 21, provides that "[a]verments in a pleading to which a responsive pleading is required, except those pertaining to amount of damages, are admitted when not denied in the responsive pleading." Ralston further contends that because a motion to correct errors is viewed as the "complaint" on appeal, then there must be an "answer." No response was filed by the State within 90 days, so Ralston concludes that the trial court in effect "became an advocate for the State of Indiana" when it overruled his motion to correct errors.

1. *Cf. Perry v. State*, (1978) Ind.App., 379 N.E.2d 531 (Where one forged prescription was presented to four pharmacies, convictions of four counts of attempted forgery and four counts of attempted possession of a controlled substance were reduced on appeal to four convictions of attempted forgery and one conviction of attempted possession of a controlled substance.).

The State responds that (1) the issue is waived by failure to assert it in a separate motion to correct errors, (2) the issue is waived because the authorities cited by Ralston do not support his position, and (3) most of the allegations raised in the motion to correct errors were raised, argued, and ruled upon at trial and to deem them admitted for failure to respond to the motion to correct errors and to label the trial court an "advocate for the State" because he overruled the motion is frivolous.

■ We must decline the State's invitation to find that this issue is waived. Our Supreme Court said in *P–M Gas & Wash Co. v. Smith*, (1978) 268 Ind. 297, 375 N.E.2d 592, that one motion to correct errors for each appellant is all that Ind. Rules of Procedure, Trial Rule 59, requires. Furthermore, although the cases cited by Ralston are not on point, we note that Ind. Rules of Procedure, Appellate Rule 8.3(A)(7), requires citation of authorities only if they exist. *Hubbard v. State*, (1974) 262 Ind. 176, 313 N.E.2d 346.

Raltson's motion to correct errors was filed on November 1, 1979, and was overruled on February 8, 1980. Trial Rule 59 was amended effective January 1, 1980. Trial Rule 59(F)(1) now provides:

"(1) Following the filing of a motion to correct error, a party who opposes the motion may file a statement in opposition to the motion to correct error not later than fifteen [15] days after service of the motion. The statement in opposition may assert grounds which show that the final judgment or appealable final order should remain unchanged, or the statement in opposition may present other grounds which show that the party filing the statement in opposition is entitled to other relief."

This addition to T.R. 59 was designed to expressly *create* an opportunity for the opponent of the motion to respond. As Professor Harvey has said,

"Section 59(F)(1) introduces a new provision and concept in the Motion to Correct Error practice and procedure, which is the Statement in Opposition.

. . . . .

"It is imperative to understand that the Statement is not required as a jurisdictional prerequisite to an appeal, or to raising those very points on appeal once a Motion to Correct Error has been filed by an opposing party or the trial court.

"The purpose of the Statement is to give the party opposing the Motion to Correct Error time in which to reply to the Motion, and to give to the party making the Statement an opportunity to explain or present to the trial court those reasons why the judgment or appealable final order should not be changed, and thus, perhaps, to avoid an appeal which otherwise might be taken from the trial court's response to the Motion to Correct Error."

4 W. Harvey & R. Townsend, Indiana Practice § 59.3, at 14 (Supp. 1980).

■ The amendment of T.R. 59 occurred two months after Raltson had filed his motion to correct errors and thus is not controlling here. We observe, however, that even though an *opportunity* to respond to a motion to correct errors is now specifically afforded by T.R. 59, it is still *not mandatory* that the opponent respond. It is true that the motion to correct errors has been called the "complaint in the appellate tribunal." *P–M Gas & Wash Co., supra*; *Bradburn v. County Department of Public Welfare*, (1971) 148 Ind.App. 387, 266 N.E.2d 805. However, it is only a complaint in the sense that filing a certified copy of it, along with the rest of the record, gives the appellate court jurisdiction, *Bradburn, supra*; Ind. Rules of Procedure, Appellate Rule 3(A), and in that it constitutes the assignment of errors to be considered on appeal, Ind. Rules of Procedure, Appellate Rule 7.2(A)(1)(a). The motion to correct errors is clearly not a complaint in the literal sense as the term is used in Ind. Rules of Procedure, Trial Rule 7, however. Accordingly, no answer is necessary to prevent the allegations of the motion from being deemed admitted.

The trial court did not exceed its authority in overruling Ralston's motion to correct errors.

*Issue Three*

█ The trial court sustained the State's motion in limine, ordering Ralston and his attorney not to mention before the jury the possible penalties for the crimes charged. Ralston argues that the order denied him his right to present effective argument to the jury regarding the penalties he faced, whether the facts merit the possible penalties, and whether the penalties fit the crime. He notes that the jury may determine the law for itself.

Similar arguments were presented to the Supreme Court in *Craig v. State*, (1979) Ind., 398 N.E.2d 658. There Justice DeBruler said,

"The next claim posed by appellant is that the trial court erred in granting the State's motion *in limine* over his objection. That order suppressed all mention by appellant or his counsel of the possible penalties which might result from a guilty verdict. Appellant argues that the order was erroneous in that it prevented the jury from being properly informed as to the law and was in violation of Art. 1, § 19, of the Indiana Constitution which declares that 'In all criminal cases whatever, the jury shall have the right to determine the law and the facts.' Appellant's first argument has been rejected by this Court. *Garcia v. State*, (1979) Ind., 394 N.E.2d 106; *DeBose v. State*, (1979) Ind., 389 N.E.2d 272. The constitutional claim was likewise recently rejected by this Court in *Drake v. State*, (1979) Ind., 397 N.E.2d 600. To date no persuasive argument has been presented to this Court that the accused in a criminal prosecution has a right to have the jury informed as to potential penalties where the jury does not engage in the sentencing function."

*Id.* at 660. Ralston's arguments are no more persuasive than those presented in *Craig*.

*Issue Four*

The State called Cathy Burns to testify and she stated that Ralston encouraged her to pass the prescription in Powell's Pharmacy. On cross–examination defendant's attorney asked her whether she had ever said that Mark Slaughter was the one who encouraged her to go into Powell's Pharmacy. She responded that Slaughter did not encourage her to go into Powell's Pharmacy. Defense counsel then confronted Burns with a signed statement she had given to Clinton Police Chief Michael Guinn. She acknowledged having given the statement. When asked to read her response to a question concerning whether Annette Pine, Mark Slaughter, or Richard Ralston had given her any encouragement to pass the false prescription, she said, "Mark Slaughter."

On redirect examination, Burns was asked to explain her answer that Slaughter encouraged her to pass the prescription. Over defendant's objection she was permitted to testify that Slaughter had encouraged her to pass the prescription at Gillis' Pharmacy, where the group had stopped prior to their going to Powell's Pharmacy, but he did not so encourage her before she entered Powell's.

The State later called Police Chief Guinn to the stand and questioned him, in part, as follows:

Q. "Officer Guinn, did you take a statement from Cathy Burns on March 30th, 1979?

A. "Yes sir, I did

Q. "Did she tell you of any involvement that Richard Ralston

MR. DARNELL: "I'm going to object, your honor, that's hearsay.

COURT: "That question may be answered yes or no.

A. "Yes, she did

Q. "What involvement did she tell you?

MR. DARNELL: "Objection. Hearsay

MR. STENGEL: "May I respond, your honor?

COURT: "All right

MR. STENGEL: "The witness has been on the stand, she's present outside for cross examination. This witness is present here so he may be cross examined, additionally the defense attorney

has tried to attack the credibility in that she may have given a different statement to Officer Guinn than what she testified today. When a witness' credibility is attacked you are allowed to bolster or show prior consistent statements and that is what we are attempting to do.

MR. DARNELL: "Your honor, he is stuck with his witnesses. He may not like them but he's stuck with what they testified to and trying to get Mr. Guinn to testify what she said to him that's hearsay.

COURT: "Objection overruled.

Q. "You may respond.

A. "Yes, she told me of his involvement.

Q. "What was that?

A. "She told me that Richard had gotten the prescription in the doctor's office and that he had filled it out for the preludin tablets and that he had given it to her to cash in Clinton and that he had also given her the hundred dollars to use to pay for the prescription once it was cashed

Q. "Did she tell you of any involvement of Mark Slaughter?

MR. DARNELL: "Your honor, we would like to show for the record objection.

COURT: "That may be answered yes or no.

A. "Yes

Q. "Was it her testimony that she told you about on March 30th, 1979 of Mark Slaughter's involvement inconsistent with her testimony today?

MR. DARNELL: "Objection for the record, your honor.

COURT: "That may be answered yes or no.

A. "Would you repeat it again, please. I didn't follow you

Q. "Was the statement that she gave you on March 30, 1979 about the involvement of Mark Slaughter in this inconsistent with her testimony about Mark Slaughter's involvement today?

A. "No"

Ralston complains that the prosecutor's question about what Burns had told Guinn of Ralston's involvement in the incident invaded the province of the jury by suggesting to it which witnesses it should believe and which it should disbelieve. Ralston attacks the prosecutor's question about whether Burns' prior statement concerning Slaughter's involvement was inconsistent with her in–court testimony as being leading, suggestive, and invading the province of the jury to determine the credibility of witnesses and the weight to be given to evidence. Finally, he asserts that the latter question invaded the province of the jury for the additional reason that Guinn should not have been permitted to express his opinion concerning the consistency of Burns' out–of–court and in–court statements.

▪ We observe that the only ground set forth by defense counsel at trial for any of these objections was the hearsay rule. It is established that counsel may not on appeal assert a different ground for objection from that given at trial. *Smith v. State,* (1980) Ind.App., 403 N.E.2d 869; *Hawke v. Maus,* (1967) 141 Ind.App. 126, 226 N.E.2d 713, *trans. denied.* Furthermore, the only times during the dialogue quoted above when defense counsel stated a ground for excluding the testimony were when he objected to the questions concerning Burns' statement about Ralston. The last two objections were general. An objection must be specific to preserve anything for our review on appeal. *Muehlman v. Keilman,* (1971) 257 Ind. 100, 272 N.E.2d 591; *Town of Schererville v. Vavrus,* (1979) Ind.App., 389 N.E.2d 346.

▪ With regard to Ralston's hearsay objections,[2] we conclude that the trial court committed no reversible error in allowing the testimony. The prosecutor stated that Burns was available for cross–examination. If that were the case–and Ralston did not

---

**2.** It is difficult to determine whether Ralston intended to reassert his hearsay argument on appeal, but we will nonetheless address that argument.

dispute that contention–then Guinn's testimony was admissible as substantive evidence. *Carter v. State*, (1977) 266 Ind. 196, 361 N.E.2d 1208, *cert. denied*, 434 U.S. 866, 98 S.Ct. 202, 54 L.Ed.2d 142; *Patterson v. State*, (1975) 263 Ind. 55, 324 N.E.2d 482. It further appears that Chief Guinn's testimony about Burns' out–of–court declaration was not being offered to show that Ralston, in fact, wrote the prescription and directed Burns to have it filled. Rather, the out–of–court declaration was offered to show that Burns had *made* that statement to Chief Guinn. In that event, Chief Guinn's testimony was not hearsay. Furthermore, defense counsel's last two objections in the dialogue quoted above were inappropriate, even if they could be construed to present a continuing objection. Those questions, relating to Burns' statement about Slaughter's involvement, did not present a hearsay problem. They were clearly calculated to indicate whether Burns had changed her story rather than to prove the extent of Slaughter's involvement.

■ Moreover, even if the admission of the disputed testimony were error, it would be merely cumulative and therefore harmless inasmuch as Burns had already testified concerning her and Ralston's participation in the crimes with which Ralston was charged. *Jackson v. State*, (1980) Ind., 402 N.E.2d 947.

*Issues Five and Six*

■ Ralston alleges that the trial court abdicated its role of impartiality and became an advocate for the State by reading to the jury its preliminary instruction No. 1 in which the court defined the offense of possession of a controlled substance. He explains that the instruction, in effect, amended the information without the prosecutor's signature and without an arraignment on the new charge.

This argument is without merit. In the paragraph of preliminary instruction No. 1 immediately preceding the paragraph defining possession of a controlled substance, the court defined the offense of attempt. These two paragraphs, when read together, define the crime charged.

Ralston further claims that the trial court erred in giving preliminary instruction No. 1 and in overruling his motion to dismiss Paragraph II of the information because Paragraph II is defective in three respects: (1) it fails to allege that he "knowingly or intentionally possesse[d] a controlled substance classified in schedule I, II, III, IV, or V, except marijuana or hashish, . . .;"[3] (2) it fails to cite the statutory provisions allegedly violated; (3) it fails to set forth sufficient facts to give rise to the inference that he may have committed a crime. Ralston believes that, because of these defects, he and the trial court were inadequately apprised of the crime the State attempted to charge.

Article 1, § 13, of the Constitution of Indiana requires that a "defendant . . . be given sufficient information to enable him to prepare his defense and to assure that he will not twice be put in jeopardy for the same crime." *Blackburn v. State*, (1973) 260 Ind. 5, 11, 291 N.E.2d 686, *appeal dismissed*, 412 U.S. 925, 93 S.Ct. 2755, 37 L.Ed.2d 152.

The essential allegations of an information are listed in Ind.Code 35–3.1–1–2(a) (Supp.1980), which provides as follows:

"35–3.1–1–2 FORM OF CHARGE

"Sec. 2. (a) The indictment or information shall be in writing and allege the commission of an offense by:

(1) Stating the title of the action and the name of the court in which the indictment or information is filed;

(2) Stating the name of the offense in the words of the statute or any other words conveying the same meaning;

(3) Citing the statutory provision alleged to have been violated except that any failure to include such a citation or any error in such a citation shall not constitute grounds for reversal of a conviction where the defendant was not otherwise misled as to the nature of the charges against him;

**3.** IC 35–48–4–7.

(4) Setting forth the nature and elements of the offense charged in plain and concise language without unnecessary repetition;

(5) Stating the time and place of the offense with sufficient particularity to show that the offense was committed within the period of limitations applicable to such offense and was committed within the jurisdiction of the court where the charge is to be filed except that the time or place of the offense shall be stated as definitely as can be done where either time or place is of the essence of the offense; and

(6) Stating the name of every defendant, if known, and if not known, by designating the defendant by any name or description by which he can be identified with reasonable certainty."

Furthermore, our Supreme Court has said, "An information need only state the crime charged in the language of the statute or in words which convey a similar meaning. In reviewing charging instruments, this Court will construe the language used in light of its common acceptance and understanding. *Heflin v. State*, (1977) Ind., 370 N.E.2d 895." *Carson v. State*, (1979) Ind., 391 N.E.2d 600, 602, *affirmed after remand*, (1980) Ind., 403 N.E.2d 330.

 In Paragraph II the State clearly indicated that it was charging an attempt. Both the word "attempt" and the statutory section defining attempt, IC 35–41–5–1, were mentioned in that rhetorical paragraph. Further, the State alleged that Ralston acted "knowingly," and it specified when, where, and how Ralston took a substantial step toward obtaining possession of the Preludin. Although the statutory section defining the crime of possession of a controlled substance was not alleged, the statutory name of the offense was stated. Under IC 35–3.1–1–2(a)(3), we must not reverse the conviction for failure to cite the statutory provision allegedly violated unless Ralston was otherwise misled about the nature of the charges. Thus, the question is whether Ralston was misled when the State

alleged that the forged prescription was for "Preludin" rather than "a controlled substance classified in schedule I, II, III, IV, or V, except marijuana or hashish."

We are not persuaded that Ralston was misled by the allegations of Paragraph II. As we noted earlier, Paragraph II stated that the crime Ralston was charged with attempting to commit was possession of a controlled substance. Given that information, one can easily find the text of IC 35–48–4–7 in one of the various versions of our codified statutes. Upon reading that code section, one realizes that the State intended to prove that Preludin is "a controlled substance classified in schedule I, II, III, IV, or V, except marijuana or hashish, . . ." Ralston was adequately apprised of the nature of the charge in Paragraph II.

*Issue Seven*

The State called James Michael, the proprietor and pharmacist of Powell's Pharmacy, to testify at trial. Michael stated that he received a B.S. degree in pharmacy from Purdue University, that he had worked at Powell's Pharmacy for 16 years, that he was a member of the Indiana Pharmaceutical Association and National Association of Retail Druggists, that he received several monthly professional publications, and that for the last several years he has participated in required continuing education programs. Later in his direct examination, the following dialogue took place:

Q. "Mr. Michael, based upon your education, your continuing education, your reading of materials and practical experience of being a pharmacist for over 15 years do you know whether or not preludin endurants contained an ingredient that is a controlled substance?

MR. DARNELL: "We're going to object to that question, your honor. May I ask a preliminary question, your honor? Mr. Michael, preludin is that in a capsule form or tablet or what?

A. "It's in a tablet form

MR. DARNELL: "Tablet form. Does that come already manufactured when you receive it?

A. "Yes sir

MR. DARNELL: "How many times in your experience have you had an occasion to do any tests or analysis upon the ingredients that go into preludin?

A. "None

MR. DARNELL: "Your honor, we would object to that question that the Prosecutor asked him in that this witness is incompetent to state whether or not preludin is a controlled substance as defined in the statutes.

COURT: "Motion overruled. You may answer the question

A. "What was your

Q. "Do you [sic] whether or not preludin endurants based upon your education, your training, your continuing education and your experience as a pharmacist for over 15 years contained an ingredient that is a controlled substance?

A. "Yes sir. The ingredient is phenmetrazine

Q. "And how do you spell that for the record?

A. "P–h–e–n–m–e–t–r–a–z–i–n–e

Q. "Will you dispense preludin endurants without being presented a prescription–excuse me–a valid prescription for them?

A. "No, that is a controlled Schedule II substance, it is has to have the doctor's signature every time it's filled

Q. "Would you dispense to someone if they asked you for preludin endurants without a prescription?

A. "No"

Shortly thereafter, the following testimony was elicited on cross–examination:

"QUESTIONS BY DON DARNELL:

Q. "Mr. Michael, you say you're the owner of Powell's pharmacy is that a corporation or a proprietorship?

A. "Proprietorship

Q. "During the course of your business do you have an occasion to receive orders for prescriptions over the phone from doctors?

A. "Yes, we do

Q. "That's over the phone?

A. "Right

Q. "How's that usually handled, I mean, do they usually say so and so will be in to pick it up

A. "Right"

 Ralston alleges that the trial court erred in overruling his objection to the question to Michael about whether Preludin contains an ingredient which is a controlled substance. He says that he was not charged with attempted possession of any substance in schedule I, II, III, IV, or V, and that the ingredient composition was irrelevant and could only confuse the jury and prejudice him. Further, he claims that Michael was not qualified to testify as an expert because he did not have sufficient independent observation of facts to form an opinion.

 We note at the outset that, as we indicated in our discussion of Issues Five and Six, Ralston was, in effect, charged with attempted possession of a substance in schedule I, II, III, IV, or V. Secondly, Ralston's relevancy argument was not made at trial and is therefore waived. *Smith v. State, supra; Hawke v. Maus, supra.* Moreover, even if the relevancy objection were preserved, it would have no merit. Michael's testimony to the effect that Preludin contains phenmetrazine, which is a schedule II controlled substance, clearly tends to prove the commission of the crime charged.

Our Supreme Court has said with regard to expert witnesses that "the professional qualifications of the witness must be established and in addition the witness must have observed facts sufficient to validly form an opinion. *McDonald v. State,* (1976) 265 Ind. 167, 352 N.E.2d 708." *McFarland v. State,* (1978) Ind., 381 N.E.2d 85, 87. However, in the case at bar Michael was not testifying on a question which required him to examine a person, view something under a microscope, or conduct scientific tests or experiments. Rather, the question put to him was one which he, as a qualified

practitioner of pharmacy, might reasonably be expected to answer based upon his training, study, and experience.

In *Isenhour v. State*, (1901) 157 Ind. 517, 62 N.E. 40, a professional chemist and physician was asked what the effect was of formaldehyde on milk as a food. The defendant objected on the ground that the witness' only knowledge shown on that subject was from reading and from conversing with other physicians rather than from experiments. The trial court permitted the witness to answer the question, and the Supreme Court found no abuse of discretion in that ruling, saying:

"Courts have never undertaken to set up a standard of scientific knowledge by which the competency of a witness may be determined, and have not gone to the extent of holding that a scientific witness can only testify from facts learned by him from personal demonstration. The general rule, in such cases, in this State at least, seems to be that where a witness exhibits such a degree of knowledge, gained from experiments, observation, standard books, or other reliable source, as to make it appear that his opinion is of some value, he is entitled to testify, leaving to the trial court, in the exercise of a sound discretion, the right to say when such knowledge is shown, and to the jury the right to say what the opinion is worth; and, as in all other cases of discretion, this court will review the action of the trial court only when that discretion clearly appears to have been abused."

*Id.* at 528, 62 N.E. 40; *accord, Travelers Indemnity Co. v. Armstrong*, (1979) Ind. App., 384 N.E.2d 607 (petition for transfer pending).

With regard to another statute, IC 1971, 35–24–1–1 (Burns Code Ed.) (since repealed), Judge Buchanan wrote:

"If a drug is identified by a name which is specifically designated as a narcotic by the Act, such as heroin or morphine, a conviction may be upheld as the trial court need only refer to the exact words of the statutory definition and determine the substance is a narcotic as a matter of law. . . .

"Similarly, if the substance, as identified, is not specifically enumerated by the Act, the State may nevertheless establish it as a legally defined narcotic drug by submitting some additional extrinsic evidence describing its chemical identity, characteristics, ingredients, or derivation so as to bring it within the Act's definition."

*White v. State*, (1974) 161 Ind.App. 568, 573, 316 N.E.2d 699.

The State, by Michael's testimony, used the latter method. In fact, it was not necessary that the State prove that phenmetrazine is a controlled substance, as that is a matter of which the trial court would take judicial notice. *See Russell v. State*, (1979) Ind.App., 395 N.E.2d 791, *trans. denied.*

The trial court did not abuse its discretion in overruling Ralston's objection to Michael's testimony.

In Issue Twelve, Ralston alleges error in the court's giving five instructions tendered by the State, two of which will be considered here for convenience sake. In plaintiff's instruction No. 3, the court told the jury: "You are instructed that Phenmetrazine is a Schedule II controlled substance." Ralston's complaint is that the State failed to allege and prove that phenmetrazine is not marijuana or hashish and that the instruction was thus unsupported by the evidence.

 Proof that the controlled substance in schedule I, II, III, IV, or V is not marijuana or hashish is not a required element of the State's case under IC 35–48–4–7. *See* "Commentary," West's AIC 35–48–4–7. Indiana Code 16–6–8.5–6(a) (Supp.1980) provides:

"16–6–8.5–6 BURDEN OF PROOF; LIABILITIES

"Sec. 6. (a) It is not necessary for the state to negate any exemption or exception in this chapter or in IC 35–48 in any complaint, information, indictment, or other pleading or in any trial, hearing, or other proceeding under this chapter or

under IC 35–48. The burden of proof of any exemption or exception is on the person claiming it."

It has been held under this subsection that the State need not prove that the defendant did not have lawful possession of the controlled substances in order to obtain a conviction pursuant to IC 1971, 35–24.1–4.1–7 (Burns Code Ed.), the predecessor of IC 35–48–4–7. *Martin v. State*, (1978) Ind. App., 374 N.E.2d 543, *trans. denied.* We find that the phrase, "except marijuana or hashish," in IC 35–48–4–7 is an exception which the State need neither plead nor prove. Plaintiff's instruction No. 3 was properly given.

Plaintiff's instruction No. 5 reads as follows:

"Except when dispensed directly by a practitioner no controlled substance in schedule II may be dispensed without the written prescription of a practitioner.

"Practitioner means a physician, dentist, veterinarian, scientific investigator, pharmacy, hospital, or other institution or individual licensed, registered, or otherwise permitted to distribute, dispense, conduct research with respect to, or administer a controlled substance in the course of professional practice or research in Indiana."

■■■ Ralston objected to this instruction at trial on the ground that, *inter alia,* "it is irrelevant to any evidence that was introduced during the course of this trial." We will accept this as sufficient to permit him to argue on appeal that the instruction contradicted the testimony of James Michael on cross–examination to the effect that he has accepted telephone orders for prescriptions from doctors.

The first paragraph of the instruction is based upon Ind.Code 35–48–3–9(a) (Supp. 1980) and the second paragraph is from Ind.Code 35–48–1–1 (Supp.1980). Ralston

is not arguing that the Preludin of which he is alleged to have attempted to gain possession was to be dispensed by oral order of a practitioner. His contention, that Michael's testimony that on unspecified occasions he has received telephone orders from doctors to fill prescriptions for certain persons conflicts with the instruction, thus, is inapposite. Further, IC 35–48–3–9(b) provides, in part, that "[i]n emergency situations, as defined by rule of the board, schedule II drugs may be dispensed upon oral prescription of a practitioner, reduced promptly to writing and filled by the pharmacy." In any event, it was Ralston–not Michael–who was on trial in this case. Ralston has not demonstrated error in the trial court's giving of this instruction.

*Issues Eight Through Twelve*

We have grouped these issues together, for they all deal with allegations, evidence, or jury instructions pertaining either to crimes with which Ralston allegedly was not properly charged or to crimes with which he was charged but which the State allegedly failed to prove. Plaintiff's instructions No. 3 and No. 5, of which Ralston complains in Issue Twelve, have already been discussed under Issue Seven.

Ralston claims that the trial court erred in giving plaintiff's instruction No. 2, which provides as follows:

"A person who knowingly or intentionally aids, induces or causes another person to commit an offense commits that offense, even if the other person has not been prosecuted for the offense."

That instruction was taken from Ind.Code 35–41–2–4 (Supp.1980).[4] Ralston's complaint is that neither paragraph of the information alleged that he knowingly or intentionally aided, induced, or caused another to commit the offenses with which he was charged. He states without citing authority that the former accessory statute,

4. "35–41–2–4 AIDING, INDUCING OR CAUSING AN OFFENSE

"Sec. 4. A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person:

(1) has not been prosecuted for the offense;
(2) has not been convicted of the offense; or
(3) has been acquitted of the offense."

Ind.Code 35–1–29–1,[5] repealed effective October 1, 1977, was procedural whereas IC 35–41–2–4 is substantive. Consequently, he concludes that IC 35–41–2–4, unlike IC 35–1–29–1, makes "knowingly or intentionally aids, induces or causes" essential elements which must be alleged in the information. In other words, Ralston believes that the State can no longer charge an accused as a principal and then prove him to be an accessory.

In a similar vein, Ralston contends that the trial court erred in overruling his motion in limine pertaining to evidence of crimes other than those for which he was being tried and in allowing the State to introduce evidence tending to prove that it was Cathy Burns who committed the acts attributed by the information to Raltson. He says further that the trial court erred in overruling his motions for directed verdict on each paragraph of the information, because there is no evidence that *he* uttered a forged instrument, intended to defraud anyone, or presented a forged prescription to Powell's Pharmacy. Ralston says that the variance between the offenses charged in the information and those which the State attempted to prove was misleading to him and he was not given enough information to prepare his defense and to ensure against double jeopardy.

 We have found no support for the proposition that Raltson cannot be convicted of forgery and attempted possession of a controlled substance upon proof that he knowingly or intentionally aided, induced, or caused another to commit those offenses. It is true that the provision in IC 35–1–29–1 to the effect that one "who shall aid or abet in the commission of a felony, . . . *may be charged* by indictment, or information, *tried and convicted* in the same manner *as if he were a principal*" (our emphasis) was not incorporated into IC 35–41–2–4. However,

IC 35–41–2–4 appears to convey the same idea even more strongly inasmuch as it is now the law that one "who knowingly or intentionally aids, induces, or causes another person to commit an offense *commits that offense,* . . . ." (Our emphasis.) The current provision says, in effect, that there is no distinction in criminal responsibility between principals and accessories before the fact. Charles A. Thompson has said that IC 35–41–2–4 would not significantly change the law in this area. "Commentary," West's AIC 35–41–2–4. It is settled that under IC 35–1–29–1 the State could charge the accused as a principal and then prove him to be an aider and abettor and have the jury instructed on the elements of IC 35–1–29–1. *Bays v. State*, (1959) 240 Ind. 37, 159 N.E.2d 393, *cert. denied*, (1960) 361 U.S. 972, 80 S.Ct. 605, 4 L.Ed.2d 551; *Dolan v. State*, (1978) Ind.App., 381 N.E.2d 543, *trans. denied*.

Decisions of the Supreme Court of Kansas support our reading of IC 35–41–2–4. There are strong similarities between IC 35–41–2–4 and K.S.A. 21–3205(1) and between the former IC 35–1–29–1 and the former K.S.A. 62–1016. In *State v. Motor*, (1976) 220 Kan. 99, 102, 551 P.2d 783, the Supreme Court of Kansas said:

"The defendant further contends the information as filed and upon which the case was tried did not state the offense specifically enough to enable the defendant to prepare his defense.

"The defendant would appear to contend the information should have charged him with aiding and abetting the burglary rather than with the commission of the substantive offense. He made no objection before proceeding to trial. He made no attack on the information prior to his conviction. He filed no motion for a bill of particulars as authorized by K.S.A. 1973 Supp. 22–3201. He is hardly in a

---

**5.** "35–1–29–1 INDICTMENTS AND INFORMATIONS; SENTENCE AND PUNISHMENT

"Sec. 1. Every person who shall aid or abet in the commission of a felony, or who shall counsel, encourage, hire, command, or otherwise procure a felony to be committed, may be charged by indictment, or information, tried

and convicted in the same manner as if he were a principal, either before or after the principal offender is charged, indicted or convicted; and, upon such conviction he shall suffer the same punishment and penalties as are prescribed by law for the punishment of the principal."

position to complain at this stage of the proceedings. (*State v. Cory*, 211 Kan. 528, 506 P.2d 1115.)

"Moreover, the defendant's contention is not found under the substantive law. K.S.A. 21–3205(1) reads:

'A person is criminally responsible for a crime committed by another if he intentionally aid, abets, advises, hires, counsels or procures the other to commit the crime.'

"This subsection of the revised Kansas Criminal Code took the place of K.S.A. 62–1016 which read:

[']Any person who counsels, aids or abets in the commission of any offense may be charged, tried and convicted in the same manner as if he were a principal.'

"The court is of the opinion there is little, if any, difference in the meaning of the language used in the two sections. In considering the latter section, we held in *State v. Ogden*, 210 Kan. 510, 502 P.2d 654:

'One who counsels, aid or abets in the commission of any offense may be charged, tried and convicted in the same manner as if he were a principal.' (Syl. para. 1.)" (Our insertion.)

*Accord, State v. Smolin*, (1976) 221 Kan. 149, 557 P.2d 1241.

We conclude that the trial court properly admitted evidence tending to prove that Ralston knowingly or intentionally aided, induced, or caused Cathy Burns to commit forgery and attempted possession of a controlled substance even though Ralston was charged with the commission of those offenses. Ralston was not misled or subjected to the risk of being twice placed in jeopardy by the State's failure to plead the provisions of IC 35–41–2–4 in the information. If Ralston wanted to learn more about the State's theory of prosecution he could have done so through discovery. Because there was evidence that Ralston knowingly or intentionally aided, induced, or caused Cathy Burns to commit the offenses charged, the trial court was correct in giving plaintiff's instruction No. 2. Furthermore, we find that there was probative evidence on each element of the offenses charged. As our Supreme Court has said:

"The overruling of a motion for a directed verdict at the close of all of the evidence is error only if there is an absence of any evidence on some essential issue, or if the evidence is without conflict and is susceptible to but one inference, which is in favor of the accused. *Mendez v. State*, (1977) Ind., 367 N.E.2d 1081, 1084; *Bash v. State*, (1970) 254 Ind. 671, 674, 262 N.E.2d 386, 388."

*Lyda v. State*, (1979) Ind., 395 N.E.2d 776, 778.

Ralston further complains about the overruling of his objections and motion in limine relating to testimony of Burns, Slaughter, and Pine which tended to show Ralston's involvement in crimes other than forgery (uttering a forged instrument) and attempted possession of a controlled substance. These other crimes are theft of the blank prescription form from Dr. Mayrose's office, forgery (making[6] a forged instrument), and aiding, inducing, or causing Burns to commit forgery (uttering) and attempted possession of a controlled substance at Gillis' Pharmacy, where the group had stopped prior to their stop at Powell's Pharmacy. Ralston asserts that evidence of crimes other than those charged is inadmissible on the question of guilt of the crimes charged if the evidence is irrelevant or is introduced to show the defendant's unsavory character or his tendency to commit certain kinds of crimes.

Ralston's statement of the general rule is substantially correct. However, our Supreme Court has recognized the *res gestae* exception to this general rule:

"Evidence of another and distinct crime is admissible where it was committed as part of the same transaction, and the fact that the evidence is admitted by way of a

---

6. " 'Make' means to draw, prepare, complete, or alter any written instrument in whole or in part."

Ind.Code 35–43–5–1 (Supp.1980).

confession does not change the application of the rule. The *res gestae* is not confined to the act charged, but includes acts, statements, occurrences and circumstances which are substantially contemporaneous with the main fact." (Citations omitted.)

*Kiefer v. State*, (1960) 241 Ind. 176, 178, 169 N.E.2d 723, *cert. denied*, (1961) 366 U.S. 914, 81 S.Ct. 1089, 6 L.Ed.2d 238; *accord*, *McCabe v. State*, (1979) Ind., 396 N.E.2d 895. It is readily apparent that the other crimes of which Ralston complains were part of the same transaction and were substantially contemporaneous with those charged. The blank prescription form was stolen, the prescription was forged, and the attempt to pass the forged prescription and obtain Preludin at Gillis' Pharmacy was made on the same day as the incident at Powell's Pharmacy. Further, each step of that day's events tends to explain the next and helps to complete the picture of which the crimes charged were a part. The trial court did not err in admitting evidence of these other crimes.

Ralston maintains that the State failed to properly allege the name of the victim who was to be defrauded by the uttering of the forged prescription or to present any evidence that such a victim existed. Consequently, he believes that the trial court erred in overruling his motions to dismiss Paragraph I and that plaintiff's instruction No. 6 [7] was erroneously given.

■ Furthermore, Ralston cites *Shinn v. State*, (1877) 57 Ind. 144, and *Yount v. State*, (1878) 64 Ind. 443, for the proposition that where the person intended to be defrauded is different from the person whose name is forged, the averments of the information must show that the person intended to be defrauded has some apparent interest in or connection with the forged instrument or stands in some relationship with the interest such that he might as a natural re-

sult be injured by the forgery. Ralston says that here Dr. Richard Mayrose's name was forged but Jim Michael, owner of Powell's Pharmacy, was the one alleged to be the intended victim of the fraud.

We find *Shinn, supra*, and *Yount, supra*, to be distinguishable from the case at bar. In *Shinn*, the defendant was charged with uttering a forged promissory note, which was purportedly signed by "S. B. Skiner" as the maker. The indictment, after setting forth the note, alleged that the note was uttered with the intent to defraud "Solomon B. Skinner." The Supreme Court reversed the conviction because the indictment did not allege that Solomon B. Skinner was the person intended by the name of "S. B. Skiner."

Similarly, in *Yount* the defendant had been charged with and convicted of the forgery of a promissory note. The indictment set forth the note, of which the named payee and one of the endorsers was "E. J. Schweitzer." The indictment proceeded to allege that the forgery was committed with the intent to defraud "Emily J. Schweitzer." Relying upon *Shinn, supra*, the Supreme Court reversed the conviction.

Moreover, our Supreme Court held more recently that the identity of the person intended to be defrauded by the uttering of a false credit sales invoice was not material. Rather, it is the allegation and proof that the defendant had the *intent to defraud* which are crucial to the conviction. *Darnell v. State*, (1972) 257 Ind. 613, 277 N.E.2d 366. Paragraph I sufficiently notifies Ralston of the crime charged.

■ Ralston contends that the trial court erroneously overruled his motion for directed verdict on Paragraph II for the reason that the State's failure to cite the proper statutory provision and to allege all the elements of attempted possession of a controlled substance placed him in a posi-

---

**7.** "You are instructed, 'with intent to defraud' means with intent to cause, by some form of deception, another person to assume, create, confer, transfer, lose, or terminate a right, obligation, or power with respect to any person or property."

tion of uncertainty as to whether the State intended to present evidence of attempted possession of a narcotic drug, IC 1971, 35–48–4–6 (Burns Code Ed., Repl. 1979).[8] He further points out that possession of a narcotic drug is a class C felony, rather than a class D felony, if ten grams or more of the drug is involved.

We have already held under Issues Five and Six that the trial court properly overruled his motion to dismiss Paragraph II. As we noted there, the name of the crime charged, attempted possession of a controlled substance, was stated in that rhetorical paragraph of the information. This was sufficient to advise Ralston that he was not going to be tried for possession of a narcotic drug.

Ralston complains about plaintiff's instruction No. 1, which says: "A person commits the crime of attempted possession of a controlled substance when he knowingly or intentionally does any act which constitutes a substantial step toward the commission of the crime of possession of a controlled substance. The crime attempted need not have been committed." Ralston argues that he was not charged with "any act" but, rather, he was charged with "presenting a forged prescription to be filled for Preludin at Powell's Pharmacy . . . ." Furthermore, he says that the uncontradicted evidence shows that it was Cathy Burns who committed the wrongful act and that he did not even go into the pharmacy.

We held earlier in this discussion that there was no error in the State's charging Ralston with the commission of the crimes and then proving that he was guilty under IC 35–41–2–4 of aiding, inducing, or causing Burns to commit those crimes. Moreover, Ralston's objection to this instruction at trial went to the alleged lack of evidence that he attempted to possess a controlled substance and that the substance

was something other than marijuana or hashish. He did not object to the "any act" language of the instruction at trial and cannot do so now on appeal. *Scott v. Krueger*, (1972) 151 Ind.App. 479, 280 N.E.2d 336, *trans. denied*; Ind. Rules of Procedure, Trial Rule 51(C).

*Issue Thirteen*

After setting forth defendant's instructions No. 1 and No. 4 in his appellant's brief, Ralston makes the following statements:

"The instructions were better instructions than those given by the trial court. The defendant's instruction 1 and 4 set forth in more specifics the duty of the jury in determining the defendant's guilt or innocence."

This is the extent of Ralston's argument on this issue. He does not specify which of the court's instructions are allegedly inferior to his, and he cites no authority in support of his position. This does not constitute a sufficient argument under Ind. Rules of Procedure, Appellate Rule 8.3(A)(7), and does not preserve any possible error for our review. *Guardiola v. State*, (1978) 268 Ind. 404, 375 N.E.2d 1105.

Judgment affirmed.

ROBERTSON, P. J., and YOUNG, J. (sitting by designation), concur.

---

8. "35–48–4–6. POSSESSION OF A NARCOTIC DRUG.–A person who, without a valid prescription or order of a practitioner acting in the course of his professional practice, knowingly or intentionally possesses a narcotic drug classified in schedule I or II commits possession of a narcotic drug, a class D felony. However, the offense is a class C felony if the amount of the drug involved has an aggregate weight of ten [10] grams or more. . . ."